A. P. OTTARSON, JR., Receiver, v. DOBSON &
JOHNSON, INC.

A. P. OTTARSON, JR., Receiver, v. FIDELITY
INVESTMENT & BOND CORPORATION.
—430 S.W.(2d) 873.

Middle Section.  January 12, 1968.

Certiorari Denied by Supreme Court May 6, 1968.

Maclin P. Davis, Jr., Nashville, for appellant.

William J. Harbison, Nashville, for appellee.

SHRIVER, P. J. As was stated by counsel at the hearing these two cases were filed separately but involve identical questions so that a decision in one is controlling in the other.

In each case, A. P. Ottarson, Jr., Receiver for S. D. Harrison Company, Inc., an insolvent corporation, seeks to set aside certain transfers made from that corporation to each of the appellees, Dobson & Johnson, Inc. and Fidelity Investment & Bond Corporation, which transfers of property were made on the same date, to wit, December 19, 1960.

The Chancellor found that each of these conveyances was made for a full and valuable consideration and at a time when the corporation was stipulated to be a going enterprise. He, accordingly, dismissed each of the suits and from the decree of dismissal in each case receiver appealed and has assigned errors.

The facts in each case are stipulated.

For the sake of brevity we copy parts of the stipulation and paraphrase the remaining parts as follows:

"It is stipulated by and between the parties that the following facts are true for the purposes of this suit.

1. Complainant, A. P. Ottarson, Jr., is the duly appointed receiver for S. D. Harrison Co., Inc., an insolvent Tennessee corporation, and was so appointed on February 23, 1961, by decree entered in the case of Nashville Breeko Block Company v. S. D. Harrison Co., Inc., et al, Rule No. 82879, Part I of the Davidson

County Chancery Court. Complainant was authorized by decree entered in said case on July 20, 1962 to bring this suit. True and correct copies of said decrees are attached hereto as Exhibits 1 and 2 to this stipulation.

2. During the period from June 1958 through December 1960, S. D. Harrison Co., Inc. was engaged in the business of constructing houses and its principal income was from the sale of these houses. During said period, defendant was the exclusive real estate sales agent for said company in two subdivisions and made construction loans to it on more than 100 houses constructed by S. D. Harrison Co., Inc. In each of these transactions, the necessary costs and expenses incident to the construction loans and the sales transactions were paid by defendant, and, when the house had been constructed and sold, the defendant, as real estate agent for S. D. Harrison Co., Inc., collected the proceeds of the sales by checks payable to defendant and then deducted these costs and expenses, as well as defendant's brokerage fees and real estate sales commissions and the balance due defendant on the construction loans, and then paid the balance remaining out of the proceeds to S. D. Harrison Co., Inc. Defendant knew what S. D. Harrison Co., Inc. paid for each lot on which it constructed houses, as well as what the houses and lots were sold for after the construction was completed.''

*In Paragraph 3* of the Stipulation it is stated that prior to December 19, 1960, S. D. Harrison Co., Inc. acquired title to seven houses and lots of real estate in Davidson County, Tennessee and continued to hold title to them until they were sold and conveyed to defendant, Dobson & Johnson on December 19, 1960. The S. D. Harrison Co.,

Inc. acquired these seven houses and lots as part payment for newly constructed houses which it sold to the former owners of said houses and lots. Dobson and Johnson was the real estate sales agent for the Harrison Company in said transactions. Each of the seven houses and lots were encumbered by mortgages which were assumed by the Harrison Company none of which mortgages was held by the defendant, Dobson & Johnson.

There follows a list of the said seven houses and lots with the appraised value of each and it is stipulated that on December 19, 1960 the equities in said houses and lots were appraised at the same values as at the time they were acquired by the Harrison Company.

*In Paragraph 4* of the stipulation it is shown that the Harrison Company was incorporated in May 1958, with an initial capital of $1,000.00 represented by its issued stock and no additional stock was ever issued and there was no increase in its capital. The statement of assets and liabilities of the Harrison Company as of December 31, 1960 showed that it had total debts of approximately $560,000.00 of which approximately $296,000.00 was owed to the defendant Dobson & Johnson and $18,000.00 to corporations affiliated with Dobson & Johnson. It had assets of approximately $286,000.00 which consisted of approximately $266,000.00 in real estate encumbered by deeds of trust to secure debts which exceeded the value of the real estate. It had approximately $16,000.00 in disputed accounts receivable; $516.80 cash in the bank and $3,070.89 in notes receivable. A copy of the statement of assets and liabilities is marked Exhibit 3 to the stipulation.

As of December 31, 1960 the financial condition of S. D. Harrison Company was substantially the same as shown

on Exhibit 3 but $18,821.85 represented equities in the above mentioned houses and lots and $19,350.00 in equities in thirteen other lots in West Meade Estates, in Section 2, in Davidson County were not included in the amounts shown on the foregoing statement.

As a result of the conveyances of said houses and lots the assets of the Harrison Company were reduced by $96,394.17 while its liabilities were reduced in the same amount.

The said seven houses and lots and the thirteen lots above mentioned were acquired by the Harrison Company after January 12, 1959.

*In Paragraph 5* of the stipulation it is stated that the President of the Harrison Company if called to testify would say that after paying all costs, expenses, fees and commissions, the company was losing from $1,500.00 to $2,000.00 on each house it constructed and sold during the last half of 1960. Defendant, Dobson & Johnson obtained a credit report on the Harrison Company in September 1960 which revealed that the company was in bad financial condition and the Executive Vice President reported to defendant that the Harrison Company was unable to pay its debts when they became due in the ordinary course of business. Thereafter Dobson & Johnson company advanced $43,000.00 to the Harrison Company so that it would be able to pay some of its debts and could continue to operate. During the last three months of 1960 said company owed its creditors more than the total value of its assets.

The Harrison Company continued to do business until the middle of January 1961.

"6. The charter of S. D. Harrison Co., Inc. was revoked for nonpayment of Tennessee franchise and excise taxes as of January 12, 1959 and was not reinstated until December 28, 1960. The defendant loaned the S. D. Harrison Co., Inc., the money to pay the delinquent taxes of said corporation in the amount of $1,028.86 in order to have its charter reinstated on December 28, 1960 and took from S. D. Harrison Co., Inc. a promissory note for the amount so loaned.

7. On December 19, 1960, S. D. Harrison Co., Inc. conveyed to defendant said seven houses and lots at the addresses shown in Paragraph 3 above. The consideration for these conveyances was the cancellation by defendant of an unsecured debt of $18,821.25 owed to defendant by the S. D. Harrison Co., Inc. Exhibits 1, 2, 3, 4, 5, 6 and 7 to the original bill in this cause are true and correct copies of the deeds of said seven houses and lots to defendant."

*In Paragraph 8* of the stipulation it is shown that on December 19, 1960, the Harrison Company conveyed to defendant Fidelity Investment and Bond Corporation the thirteen other lots of real estate in West Meade Estates, Section 2, the consideration for which was the cancellation by Fidelity Investment and Bond of an unsecured debt owed it by the Harrison Company amounting to $19,350.00 and the cancellation of $58,000.00 of unpaid purchase price for said lots owed by the S. D. Harrison Company to Fidelity Investment and Bond Corporation under an installment deed, plus $222.32 past due interest.

Fidelity Investment & Bond Corporation had the same officers and stockholders as the defendant Dobson and

Johnson. The Harrison Company had agreed to purchase the foregoing thirteen lots from Fidelity Investment and Bond Corporation for $77,350.00 for which it paid $19,350.00 cash and gave a note for $58,000.00 secured by a lien on the property.

*Paragraph 9* gives a list of the seven houses and lots referred to in Paragraph 3 and the amounts for which each was sold. It is also shown that during the time that Dobson & Johnson held these properties it paid the first mortgage and taxes on each and made necessary repairs.

"10. Filed herewith as collective Exhibit 4 to this stipulation are copies of the petition filed in Part I of the Chancery Court by William R. Willis, Jr., and Thomas A. Higgins, answer of Albert W. Johnson Insurance Company to said petition, exceptions of the Receiver to said petition, stipulations filed by the parties with reference to said petition, and decree dated April 18, 1961 in Part I of the Chancery Court of Davidson County, Tennessee, ruling upon said petition. Said copies are true and correct copies of the originals, and no appeal was taken from said decree.

11. The parties to this suit were also the parties in the case of A. P. Ottarson, Jr., Receiver for S. D. Harrison Co., Inc. v. Dobson & Johnson, Inc., 372 S.W.2d 777 (52 Tenn.App. 280 M.S.1963), decided by the Tennessee Court of Appeals on September 4, 1963, with certiorari denied by the Supreme Court of Tennessee on December 5, 1963.

12. Defendant has filed a claim in the receivership proceedings pending in Part I of the Chancery Court

of Davidson County, Tennessee in the amount of $72,286.36 allegedly due to it from S. D. Harrison Co., Inc."

The above stipulation is signed by counsel for all the parties.

Included in the record is an order entered February 17, 1961 by Chancellor Lentz in the case of Nashville Breeko Block Company v. S. D. Harrison Company, Inc., et al, appointing A. P. Ottarson, Jr., as Receiver of the Harrison Company and enjoining all suits except in the Receivership case.

By order of July 20, 1962, on motion of the Receiver, authority to file the present suit was granted.

Chancellor Adams on July 14, 1967 filed his memorandum opinion in which he observed that the Receiver of S. D. Harrison Company, Inc. seeks to set aside the conveyances made by said company to the respective defendants on December 19, 1960 of various parcels of real estate located in Davidson County, Tennessee for which said company received a credit from each defendant upon indebtedness due each of them by S. D. Harrison Company, Inc., in amounts equivalent to the value of the properties conveyed to each. It is observed in the opinion that among other things the stipulation states that the S. D. Harrison Company, Inc., continued to do business until the middle of January 1961, while the General Creditors Bill was filed against said company on February 6, 1961 which bill was sustained as a General Creditors Bill on February 23, 1961 and complainant A. P. Ottarson, Jr., was appointed Receiver on March 1, 1961.

It is pointed out in the opinion that the complainant in each case seeks to set aside the conveyances upon the theory that the Harrison Company was insolvent at the time the conveyances were made and that, therefore, its assets constituted a trust fund to be distributed pro-rata among its creditors.

The Chancellor cites the case of Tradesman Publishing Co. v. Carr Wheel Co., 95 Tenn. 634, 644, 32 S.W. 1097, 31 L.R.A. 593, where the Supreme Court held that:

"Although the liabilities of a corporation may greatly exceed its assets, it is not insolvent in such sense as that its assets become a trust fund for pro rata distribution among its creditors, so long as it continues to be a going concern."

The opinion concludes:

"In the case under consideration, S. D. Harrison Company, Inc., received full value for the lands it conveyed to the defendants in the form of credits upon its indebtedness to defendants while it was still a going concern and before a bill had been filed to administer its assets.

The Court is therefore of the opinion that at the time the transfers in question were made to the respective defendants the assets of said corporation did not constitute a trust fund for the benefit of its creditors.

A decree will be entered in each cause dismissing the original bill at the cost of the complainant.

Alfred T. Adams, Chancellor".

## ASSIGNMENTS OF ERROR

There are three assignments of error which insist (1) that the Chancellor erred in holding that the S. D. Harrison Company received full value for the lands it conveyed to the defendants; (2) that he erred in holding that at the time of the conveyances the assets of said company did not constitute a trust fund for the benefit of its creditors and (3) that there is no material evidence to support his decree dismissing complainant's bill.

In considering the assignments of error it is to be noted that the stipulation of the parties is to the effect that the conveyances which are sought to be set aside in this proceeding were each supported by a consideration which in the case of Dobson & Johnson, Inc., was the payment, or partial payment, of an unsecured debt owed it by the Harrison Company, in the amount of $18,821.25, which was the appraised value of the equities in said properties, and, in addition thereto, the appellee assumed the mortgages on the property. In the case of the Fidelity Investment & Bond Corporation the consideration was the cancellation of the unpaid purchase price of the lots, which was owed by the Harrison Company to that defendant, plus past due interest.

We find no sufficient evidence in the record sustaining the allegations of complainant that these conveyances were fraudulently made, or made for the purpose of defrauding, hindering or delaying creditors. The chief argument on this appeal seems to be that at the time of these conveyances the Harrison Company was insolvent and its charter had been revoked, hence its assets constituted a trust fund for the benefit of creditors.

It is important to note the provisions of our Statutes with respect to fraudulent conveyances.

Section 64-309, T.C.A. provides as follows:

"64-309. Test for insolvency.—A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

Under the foregoing test it is admittedly true that the Harrison Company was insolvent at the time the conveyances in question were made.

Section 64-311, T.C.A. is as follows:

"64-311. 'Fair Consideration' defined.—Fair consideration is given for property, or obligation, (a) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) when such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained."

Note 3 under the foregoing section of the Code cites Bank of Hendersonville v. Dozier, 24 Tenn.App. 178, 142 S.W.2d 191, in which the Court held that where a debtor conveyed land by deed of trust to a daughter to secure the payment of notes held by the daughter, which conveyance left the debtor insolvent and it was shown by testimony that the daughter had paid bills of the debtor equivalent to the amount of the notes, thus, the conveyance was for a fair consideration and not fraudulent even though the bills had been paid long prior to the giving of the notes

and even though no interest was paid on the notes and the daughter did not intend to enforce them when they became due.

In the same case it was also held that the burden of proof is generally on the complainant to establish that the consideration was insufficient.

In Hicks v. Whiting, 149 Tenn. 411, 258 S.W. 784, it was held that in order to make a conveyance fraudulent against creditors, it must be without a fair consideration leaving the grantor insolvent; or it must be made with actual intent to hinder, delay, or defraud creditors.

In said case it was also held that a corporation is not insolvent in such a sense that its assets become a fixed trust fund in the hands of its officers for pro-rata distribution among its creditors so long as it continues to be a going concern conducting its business in the ordinary way although its debts may greatly exceed its assets.

Section 64-312, T.C.A. provides that conveyances by an insolvent *without fair consideration* is fraudulent. In the notes under this section Hicks v. Whiting, supra is cited.

Section 64-314. T.C.A. referring to conveyances before the debt is incurred, likewise, provides that every conveyance *made without fair consideration,* when the person making the conveyance intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent.

Section 64-315, T.C.A. provides that every conveyance made and every obligation incurred with actual intent to hinder, delay, or defraud creditors is fraudulent.

Thus, since by the stipulation it is seen that there was a fair consideration for the conveyances in question,

and, since no intent to defraud is shown, we must concur in the conclusion of the Chancellor that these conveyances, are not fraudulent in law or in fact.

The above stipulation is to the effect that the charter of S. D. Harrison Company, Inc. was revoked for non-payment of Tennessee Franchise and Excise Taxes as of January 13, 1959 and was re-instated December 28, 1960. But it is also stipulated that said concern continued to operate its business until the middle of January 1961.

It is the insistence of complainant that the fact that its charter was revoked for non-payment of taxes was an act of insolvency sufficient to make the trust fund doctrine applicable, and that the fact that this company conveyed practically all its available assets so as to give a preference to the defendants to the exclusion of other creditors was an act of insolvency sufficient to make the conveyances void and the trust fund doctrine applicable.

In Nickey Brothers v. Lonsdale Mfg. Co., 149 Tenn. 391, 258 S.W. 776, it is said that insolvency alone is not sufficient to constitute the assets of a corporation a trust fund for the benefit of its creditors, but that there must be some positive act of insolvency such as the filing of a bill to administer its assets, or the making of a general assignment, or the cessation of business. As was noted by the Chancellor, in Tradesman Publishing Co. v. Car Wheel Co., 95 Tenn. 632, 644, 32 S.W. 1097, 31 L.R.A. 593 it was said:

"It has been held, however, in this State that, although the liabilities of a corporation may greatly exceed its assets, it is not insolvent in such sense as that its assets become a trust fund for pro rata distribution among its creditors, so long as it continues to be a going concern,

and conducts its business in the ordinary way. There must be some positive act of insolvency, such as the filing of a bill to administer its assets, or the making of a general assignment, or the permanent cessation to do business."

In United States for use of Jahn v. Jones Coal Co., 368 F.2d 217 (6th Circuit 1966) it was said that under Tennessee law the revocation of the charter of a corporation for non-payment of taxes does not result in the abrogation of its choses in action and those who owe money to the corporation are not relieved of their obligations.

In Bland Co. v. Knox Concrete Products, Inc., 207 Tenn. 206, 338 S.W.2d 605, it was pointed out that a corporation whose charter was revoked under pertinent statutes had a reasonable time in which to wind up its affairs and business but that seven years after revocation was not a reasonable time.

And in Mechanic's Bank & Trust Co. v. Knoxville S. & E. Ry. Co., 148 Tenn. 113, 251 S.W. 906 and other cases cited in the notes under Section 48-126, T.C.A., it was pointed out that the assets of an insolvent corporation became, from the date of its assured insolvency, a trust fund for equal distribution among its creditors, but that there must have been some positive act of insolvency such as the filing of a bill to administer the assets or the making of a general assignment or a *cessation of business.*

Under the stipulation in this case there was not a cessation of business of the Harrison Company until the filing of the bill for the purpose of receivership sometime after the transactions in question here.

In 7 R.C.L., Section 42 "De Facto Corporations" it is said that a corporation that may not qualify as a de jure corporation, may be so far a corporation that for reasons of public policy, no one but the State will be permitted to call in question the lawfulness of its organization and such organization is termed a corporation de facto, that is, a corporation from the fact of its acting as such, though not in law or of right a corporation. And this de facto character will not be varied by the fact that the corporation was insolvent.

At Section 82 of the same text, it is said:

"It is a well established general rule that where one contracts with an alleged corporation, as such, and in such manner as to recognize its corporate existence de jure or de facto, he will be estopped to deny the fact thus admitted, whether the denial goes to the question of an originally legally organized body, or to that of a cessation of corporate existence."

And it is said in Section 87 of the same text that a forfeiture of the corporate franchise can only be taken advantage of by the sovereignty creating it and must, as a general rule, be adjudged in a judicial proceeding instituted for that purpose and a debtor of such corporation cannot avoid liability on the ground that the corporation has forfeited its charter, if there has been no adjudication of such forfeiture.

It is to be remembered that the complainant herein was appointed Receiver of the S. D. Harrison Company as a corporation and proceeded to act as such. Thus, it would seem that he is not in a position to insist on the one hand that the corporate existence ceased while, on the other

hand, that it continued to exist so that he as receiver could handle its corporate assets.

On the whole, we feel compelled to sustain the position of the appellant and hold that the Chancellor reached the right conclusion in this case.

It results that the assignments of error in both cases are overruled and the judgment of the Chancellor is affirmed.

Affirmed.

Puryear and Todd, JJ., concur.