EWIN H. BUSH and WILLIAM F.        )
GIBSON, Co-Administrators of the    )
Estate of Lonnie Mae Lane,          )
Deceased,                           )
                                    )
            Plaintiffs/Appellants,  )
                                    )    Bedford Chancery
                                    )    No.  17,949
VS.                                 )
                                    )    Appeal No.
                                    )    01-A-01-9507-CH-00288
TONY WESLEY CARRICK,                )
Individually, and as Administrator of the  )
Estate of Harvey Wesley Carrick,    )
Deceased,                           )
                                    )
            Defendant/Appellee.     )

FILED

Nov. 17, 1995

Cecil Crowson, Jr.
Appellate Court Clerk


IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT OF BEDFORD COUNTY

AT SHELBYVILLE, TENNESSEE


HONORABLE TYRUS H. COBB, CHANCELLOR



ALLEN SHOFFNER
Shoffner Professional Building
207 North Spring St.
Shelbyville, Tennessee  37160
ATTORNEY FOR PLAINTIFFS/APPELLANTS


Tamra L. Smith
NORTON & SMITH
One on the Square
P.O. Drawer 37
Shelbyville, Tennessee 37160
ATTORNEY FOR DEFENDANT/APPELLEE


AFFIRMED AND REMANDED

                        HENRY F. TODD
                        PRESIDING JUDGE, MIDDLE SECTION


CONCUR:
SAMUEL L. LEWIS, JUDGE
BEN H. CANTRELL, JUDGE

EWIN H. BUSH and WILLIAM F. )
GIBSON, Co-Administrators of the )
Estate of Lonnie Mae Lane, )
Deceased, )
 )
     Plaintiffs/Appellants, )
 )    Bedford Chancery
 )    No.  17,949
VS. )
 )    Appeal No.
 )    01-A-01-9507-CH-00288
TONY WESLEY CARRICK, )
Individually, and as Administrator of the )
Estate of Harvey Wesley Carrick, )
Deceased, )
 )
    Defendant/Appellee. )


O P I N I O N


The nature of this suit is stated in the complaint as follows:

> The purpose of this action is to set aside for the benefit of the estate of the said Lonnie Mae Lane the conveyances of the land hereinafter described, which rendered the said Harvey Wesley Carrick and his estate insolvent and which were fraudulent as to creditors of Harvey Wesley Carrick and his estate.


The Trial Court dismissed the suit in an order which stated:

> . . . Court finds that the plaintiffs have failed to establish by a preponderance of the evidence that Harvey Wesley Carrick had actual intent to defraud his creditors or that any of the conveyances subject of this suit render him insolvent.


On appeal, plaintiffs present issues for review as follows:

> 1.  Whether the trial judge erred in sustaining defendant's objection and refusing to allow plaintiffs to cross-examine defendant about defendant's disposition of funds from a certificate of deposit held in the names of defendant and defendant's intestate, which was material to the issue of the decedent's ownership of assets and the insolvency of his estate.

> 2.  Whether the trial judge, after refusing to allow plaintiffs to cross-examine defendant about his disposition of funds from the certificate of deposit, further erred in refusing to strike and exclude the testimony offered by defendant which directly contradicted defendant's sworn unsupplemented deposition testimony material to the issue of the decedent's ownership of assets and the insolvency of his estate.

3. Whether the trial judge erred in refusing to allow plaintiffs to amend their complaint by adding the allegations contained in a written motion based upon evidence disclosed in defendant's supplemental deposition relative to disposition of funds from the certificate of deposit.

4. Whether the trial judge erred in finding the issues in favor of the defendant and failing to find that the transfers made by defendant's intestate to defendant without consideration rendered the defendant's intestate and his estate insolvent.

*-Third Issue:  Refused Amendment of Complaint-*

The original complaint, filed on June 18, 1992, related only to three conveyances by deceased of three tracts of real estate.  No other property or conveyance of deceased was mentioned.

On June 3, 1994, plaintiffs moved to amend the complaint by adding thereto the following:

> Plaintiffs aver that on September 10, 1984, the defendant, Tony Wesley Carrick, cashed out by his individual endorsement alone Certificate of Deposit No. 30544 issued by the First National Bank of Shelbyville, Tennessee, and payable to the decedent, "H.W. Carrick or Tony Carrick, THWROS." The defendant received the principal amount of $39,054.40, which he used and spent for his personal purposes, including the construction of a residence on the land described in Paragraph 10 (b) of the original complaint.  The defendant has testified that Harvey Wesley Carrick furnished all of the funds for the certificate of deposit and that this was in reality his money, not defendant's.  The transfer of said money to defendant was made without any consideration, rendering the said Harvey Wesley Carrick and his estate insolvent, and therefore is fraudulent in law as well as in fact.

> Plaintiffs aver, therefore, additionally and alternatively, that in the event the Court finds Harvey Wesley Carrick was not insolvent at the time he made the conveyances of real estate referred to in the complaint, he was rendered insolvent by the transfer of the funds to defendant from the certificate of deposit.

> . . . (a)  That the conveyances referred to in the original complaint be set aside to the extent necessary to satisfy the judgment held by the estate of the said Lonnie Mae Lane;

> (b)  That, in the event the Court does not grant the relief requested in the preceding item, the transfer of the money from the certificate of deposit be set aside to satisfy plaintiffs'

judgment and enforced by a constructive trust and lien upon defendant's property upon which improvements were constructed with said money; and . . . .

On August 26, 1994, the Trial Court filed the following memorandum:

This suit to set aside a conveyance was heard on its merits without a jury on Nov. 16, 1993. At the conclusion of the trial plaintiffs moved to strike certain testimony of the defendant. The entire matter was taken under advisement. On November 19, 1993 plaintiffs filed a motion to reopen the evidence. The motion to strike was overruled and the motion to reopen the evidence was granted.

On June 3, 1994 plaintiffs filed a motion to amend the complaint to add a new cause of action. The cause is before the Court on the motion to amend the complaint.

After consideration of the motion and the Court record, the Court is of the opinion that said motion is not timely or otherwise well taken and should be overruled.

Upon application of either party this cause will be set for the hearing of any additional evidence under the original complaint.

On September 2, 1994, the memorandum was made the order of the Court.

After a further hearing on January 13, 1995, an order was entered dismissing plaintiffs' suit.

T.R.C.P. Rule 15.01 provides in pertinent part as follows:

**Amendments. -** A party may amend his pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, he may so amend it at any time within fifteen (15) days after it is served. Otherwise a party may amend his pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires. . . .

As stated above, the original complaint was filed on June 18, 1992. The answer of defendant was filed on August 3, 1992. On June 3, 1994, when the motion to amend was filed, amendment was not a matter of right, but a matter of discretion of the Trial Court. The

application to amend came two years after the filing of the original complaint and six months after the cause had been heard on its merits and taken under consideration by the Trial Judge.

At the trial on November 16, 1993, defendant testified in part as follows:

> A. Well, in 1984 he would have had a lot of the same assets that he had when he deceased in '87. Such as his personal checking account, his car, his household furniture, his stock in Co-op, undivided dividends through the Co-op. He would also have assets of a joint CD that we held together. He would also have assets as far as the joint farm account. His name was still on the farm account. He could write a check if he wanted to. Occasionally he would, but not very often. (Emphasis supplied.)
>
> . . . .
>
> Q. At the time of the conveyance of February 1984, do you have knowledge of how much was in the joint CD that you and he held together?
>
> . . . .
>
> THE WITNESS: First National Bank that was approximately thirty-seven thousand five-hundred dollars.

Clearly, as of November 16, 1993, six months before the application to amend, the plaintiffs had knowledge of the jointly held certificate of deposit. At that time the following occurred:

> Q. And is it your testimony that that was the thirty-seven thousand, five hundred approximately that your dad owned or had at the time he gave you this third deed? Is that your testimony?
>
> A. That was a joint CD between my father and myself; correct.
>
> Q. What happened to that money?
>
> MS. SMITH: Your Honor, I object to what happened to the money; the question is --
>
> THE COURT: Sustained.
>
> BY MR. SHOFFNER:
>
> Q. How long did you and your dad keep that money in that joint account?

MS. SMITH:  Your Honor, I object to that also. The question is whether or not he had it at the time of or needed --

THE COURT:  Why is that material?  The issue here is regarding February 10th, whether they had it at that time or not?  Why is it material what happened to it later.

MR. SHOFFNER:  Well, Your Honor, I'm trying to show that if he had these accounts at the time of his death, Mr. Carrick's death, then this property would not have gone into his estate but to his son, Mr. Carrick.

THE COURT:  You didn't -- the suit does not address these, obtaining these funds; does it?  It just has to do with real estate.

MS. SMITH:  That's correct, Your Honor.

THE COURT:  Maybe I don't understand you. Say it again.

MR. SHOFFNER:  Your Honor, the point I'm trying to make is that apparently there is a claim that these funds, evidenced by these certificates of deposit were Mr. Harvey Carrick's assets and funds, at that time whereas actually he didn't -- this was a joint account.  This money was not in his name.

*Te Nov. 16, 1993 at  82-84.*

Thus, on November 16, 1993, plaintiffs were reminded that the suit did not relate to the certificate of deposit, and no effort was made until six months later to amend the suit to include the certificate of deposit.

It appears that, during the trial, the existence of the certificate of deposit was considered relevant only on the question of whether deceased was rendered insolvent by the conveyances of real estate mentioned in the complaint.  The effort to charge the defendant with conversion of the certificate of deposit to his own use came as an afterthought six months later.

After the complaint has been answered, amendment of the complaint is not a matter of right, but is subject to the discretion of the Trial Judge which will not be disturbed on appeal in the absence of an erroneous exercise of discretion. *Merriman v. Smith,* Tenn. App. 1980, 599 S.W.2d 548.

No reversible error is found in the refusal of leave to amend under the circumstances.

*-First and Second Issues:  Refusal of Cross-Examination and Failure to Strike Testimony-*

In support of this issue, plaintiffs cite pages 37 and 38 of the technical record and pages 82-85 and 114-116 of the transcript.  Page 37 of the technical record contains the following:

> This suit to set aside a conveyance was heard on its merits on Nov. 16, 1993.  At the conclusion of the evidence plaintiffs moved to strike certain testimony of the defendant and subsequently filed a motion to reopen the evidence as alternative relief.
>
> After due consideration of the respective motions, plaintiffs' brief and the defendant's response, the court finds that the motion to strike should be denied and the motion to reopen the evidence should be granted.

Page 38 of the technical record is the order implementing page 37.

Pertinent portions of pages 82-85 of the transcript are quoted above.

Pages 114-116 of the transcript record statements of counsel for the plaintiff in final argument on November 16, 1993, as follows:

> MR. SHOFFNER:  First of all, Your Honor, I want to make a motion at this time to exclude from consideration as evidence in this case, evidence of testimony which directly contradicts the deposition of Tony Carrick in this case.  And based on the grounds that there was no supplementation to his answers that was previously read into this record.  And I'd like again to refer to that question and the answer

that he gave me on August 22nd, I mean 19th of 1992.

I asked him this question: All right, let me get back to the question that I earlier asked you, at the date of that conveyance what assets, if any, did your father have left after he gave you that deed. His answer: He had his checking account, his furniture, he had an old '68 model Buick car that was wrecked in the front end and whatever cash he might have had in his pocket, I guess.

. . . .

. . . He didn't give me a truthful answer because now at the hearing of this case, he comes in to Court and claims that his dad, Mr. Harvey Carrick, had thirty-seven thousand five-hundred dollars approximately in a CD. He didn't say one thing about a CD in his deposition. He never supplemented an answer to that deposition.

And I move that the Court strike the evidence dealing with these certificate of deposits.

Other than the quoted excerpt from pages 82-85 of the transcript, no effort to cross-examine or refusal of cross-examination is found in the cited part of the record.

It appears that, at this point, plaintiff was attempting to exclude from the record any reference to the certificate of deposit the existence of which would defeat plaintiffs' claim that deceased was rendered insolvent by the real estate conveyances. As previously noted, cross-examination as to conversion of the proceeds of the certificate of deposit was excluded because conversion of such funds was not included in the original complaint.

On the subject of the existence and disposition of the certificate of deposit, an official of the bank testified without contradiction in pertinent part as follows:

Q. All right, would you tell the Court what certificates of deposit you have in your possession, when they were issued and whose names were placed on that certificate of deposit?

A.	The first one issue date was September 7th, 1983, it is entitled in the name of H. W. Carrick or Tony Carrick.

Q.	What was the amount?

A.	The amount was thirty-seven thousand, two fifty-four-0-two.

. . . .

A.	I have one issue date March 8th of 1984, titled H. W. Carrick or Tony Carrick in the amount of thirty-nine thousand, fifty-four dollars and forty cents.

Q.	And is there a designation as to how that certificate of deposit was held?

A.	Either or survivor.

According to the complaint, the last conveyance of realty (which would be the one allegedly rendering deceased insolvent) was on February 10, 1984. According to the above testimony, on February 10, 1984, deceased was a joint owner of the $37,254.02 certificate of deposit issued on September 7, 1983, and renewed on March 8, 1984.

Thus, all information relevant to the existence of the certificate of deposit on the critical and determinative date was before the Court by uncontradicted testimony of the bank employee, and the striking of defendant's testimony on the same subject would not have affected the result of the suit.

No reversible error is found in plaintiffs' second issue.

*-Fourth Issue: Conclusion of Trial Court-*

T.C.A. Section 66-3-101 reads as follows:

**Conveyances in fraud of creditors or purchasers void. -** Every gift, grant, conveyance of lands, tenements, hereditaments, goods, or chattels, or of any rent, common or profit out of the same, by writing or otherwise; and every bond, suit, judgment, or execution, had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and

-9-

lawful actions, suits, debts, accounts, damages, penalties, forfeitures; or to defraud or to deceive those who shall purchase the same lands, tenements, or hereditaments, or any rent, profit, or commodity out of them, shall be deemed and taken, only as against the person, such person's heirs, successors, executors, administrators, and assigns, whose debts, suits, demands, estates, or interest, by such guileful and covinous practices as aforementioned, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, of any other matter or thing, to the contrary notwithstanding. . . .

T.C.A. Section 66-3-305 reads as follows:

**Conveyances by insolvent without fair consideration declared fraudulent.-** Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to such person's actual intent, if the conveyance is made or the obligation is incurred without a fair consideration. . . .

In order to make a conveyance fraudulent against creditors, it must be without a fair consideration, leaving the grantor insolvent; or it must be made with actual intent to hinder, delay, or defraud creditors. *Hicks v. Whiting,* 258 S.W. 784 (1924), 149 Tenn. 411; *Ottarson v. Dobson & Johnson, Inc.,* 430 S.W.2d 873 (1968), 58 Tenn. App. 408; *Macon Bank & Trust Co. v. Holland,* 715 S.W.2d 347 (Tenn. Ct. App. 1986).

Every conveyance without a fair consideration is fraudulent if the conveyor is thereby rendered insolvent, or if he is engaged or about to engage in a business or transaction for which his remaining property is an unreasonably small capital, or if he intends or believes that he will incur debts beyond his ability to pay; the second situation making the conveyance fraudulent as to creditors and as to persons who become creditors during the continuance of such business transaction, and the third as to both present and future creditors. *State ex rel. v. Nashville Trust Co.,* 190 S.W.2d 785 (1944); 28 Tenn. App. 388.

A conveyance which renders the grantor execution proof is fraudulent, irrespective of grantor's intent, and may be set aside where there was no consideration for the conveyance,

and grantee knew of the fraud at the time of the conveyance. *Citizens Bank & Trust Co. v. White,* 12 Tenn. App. 583 (1930).

The evidence shows that, at the time of the three conveyances mentioned in the complaint, deceased was possessed of property adequate to satisfy his debts and was not rendered insolvent by any one of the said conveyances.

At the time of the conveyances, the joint bank account was subject to the claims of creditors of deceased as if he were the sole owner thereof. T.C.A. § 45-2-703(a).

There is no evidence of any actual intent of deceased to defeat any present or future creditor.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiffs. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

                                                 _____
                                                 HENRY F. TODD
                                                 PRESIDING JUDGE, MIDDLE SECTION

CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE