**IN THE COURT OF APPEALS OF TENNESSEE**
**WESTERN SECTION AT JACKSON**

FILED

December 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

LAURA NEVILLE MULLER,  )
Individually and on behalf of  )
THE ESTATE OF WADE LANNOM,  )
  )
Plaintiff/Appellant,  ) Lake Chancery No. 3894
  )
VS.  ) Appeal No. 02A01-9702-CH-00043
  )
EVELYN RANKIN LANNOM,  )
  )
Defendant/Appellee.  )

APPEAL FROM THE CHANCERY COURT OF LAKE COUNTY
AT TIPTONVILLE, TENNESSEE
THE HONORABLE J. STEVEN STAFFORD, CHANCELLOR

**JOHN D. HORNE**
**THE WINCHESTER LAW FIRM**
Memphis, Tennessee
Attorney for Appellant

**DAMON E. CAMPBELL**
**CONLEY, CAMPBELL, MOSS & SMITH**
Union City, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Plaintiff, Laura Muller ("Muller"), appeals the order of the trial court dismissing her complaint to set aside transfers, or in the alternative, to impose a constructive trust or an equitable lien on the certificates of deposit ("CDs") that had been owned by Wade Lannom ("Lannom") and eventually transferred to his second wife, Defendant, Evelyn Rankin Lannom ("Rankin"). For reasons stated hereinafter, we affirm the judgment of the trial court.

## FACTS

Lannom lived in Lake County, Tennessee, his entire life. He had been married to Mary Ruth Lannom for approximately 57 years when she died on July 11, 1990. Muller was the only child of this marriage.

On August 12, 1991, Lannom made a gift of approximately 400 acres of real property to Muller. This gift was evidenced by a quitclaim deed that was properly recorded.

On August 12, 1991, Lannom held five CDs in the principal amounts of $10,000 each issued by First State Bank & Trust ("First State Bank"). Each CD listed Lannom and Muller as depositors. On December 6, 1991, Lannom had First State Bank issue five new CDs for the same amounts. However, this time, Lannom had himself listed as the sole depositor. In February 1992, Lannom married Rankin.

On or before April 15, 1992, Lannom was required by T.C.A. § 67-8-110 to file a gift tax return with the Tennessee Department of Revenue ("Department of Revenue") reporting his August 12, 1991, gift to Muller. Lannom failed to do so.

On June 6, 1992, and again on June 13, 1993, Lannom caused First State Bank to issue five new CDs in the amount of $10,000 each listing Lannom and Rankin as joint depositors to replace the five CDs he had held on December 6, 1991. Lannom and Rankin held said CDs as joint tenants.[1] On November 25, 1993, Lannom died in Lake County,

---

[1]We note that counsel for Rankin views the conveyance of the CDs as creating a tenancy by the entirety. However, the CD expressly states that the depositors listed on the CDs hold as joint tenants with right of survivorship.

Tennessee. Thereafter, on January 4, 1994, Muller was appointed Executrix of Lannom's estate.

As Executrix, on March 8, 1994, Muller filed a short form inheritance tax return with the Department of Revenue in which she reported Lannom's August 12, 1991, gift to her. On May 25, 1994, the Department of Revenue advised Muller to file a gift tax return on behalf of Lannom that reflected his unreported August 12, 1991, gift. On or about June 15, 1994, Muller, as Executrix, filed a 1991 Tennessee gift tax return for Lannom with the Department of Revenue in which she reported the August 12, 1991, gift. Thereafter, on October 6, 1994, the Department of Revenue issued a notice of assessment against Lannom for the 1991 Tennessee gift taxes, penalties, and interest in the amount of $40,811.63.

On December, 30, 1994, Muller filed a complaint against the Department of Revenue challenging the assessment of the 1991 gift tax liability against Lannom. On September 29, 1995, the court entered a final order sustaining the 1991 gift tax assessment against Lannom and entering judgment in favor of the Department of Revenue in the amount of $43,402.88 plus interest and attorney's fees. There were no funds in Lannom's estate from which to pay the September 29, 1995, judgment.

On or about May 20, 1996, Muller paid the Department of Revenue the sum of $47,363.00 to satisfy Lannom's 1991 gift tax liability. In order to pay the tax liability of Lannom, Muller borrowed the money using the 400 acre gift as collateral. On May 31, 1996, an agreed final order was entered reflecting that the September 29, 1995, judgment would be satisfied by the payment of the $43,402.88 and that court costs would be paid by Muller as Executrix.

Shortly after Rankin's marriage to Lannom, she was added to his checking account

---

It is, of course, legally permissible for a husband and wife to own either real or personal property in any manner they choose, such as tenants in common, individually, in partnership, as life tenant and remainderman, or any other. Griffin v. Prince, 632 S.W.2d 532, 535 (Tenn. 1982); Catt v. Catt, 866 S.W.2d 570, 573 (Tenn. Ct. App. 1993).

as joint owner. After Lannom's death, Rankin took possession of Lannom's checking account which had a balance of $18,084.44. Rankin also took possession of Lannom's 1991 Jeep Briarwood that Lannom had purchased with cash, his John Deere Hydrostatic lawn and garden tractor, as well as the five CDs in the amount of $10,000 each.

At the time of her marriage to Lannom, Rankin was receiving social security benefits attributable to her deceased husband, Harry Rankin. In place of the social security she had been receiving from her former husband, Rankin currently receives social security benefits attributable to Lannom in the approximate amount of $1,050.00 per month.

After Lannom's death, Rankin returned to her home in Tiptonville, Tennessee, in which she had resided prior to her marriage to Lannom and which she continued to maintain during her marriage to Lannom.

Bank records were subpoenaed for trial from the First Exchange Bank in Tiptonville, Tennessee. Those bank records manifested that, after Lannom's death, Rankin converted the CDs to her name and made them payable to her children upon her death. The bank records also indicated that, approximately one month prior to trial, Rankin closed her accounts and moved the funds represented by the CDs away from First Exchange Bank.

On January 4, 1994, Muller, in her individual capacity and as Executrix, filed a complaint to set aside transfers, or in the alternative to impose a constructive trust or an equitable lien, and for injunctive relief against Rankin in the Chancery Court of Lake County, Tennessee. Muller sought, among other things, to impose an equitable lien or a constructive trust upon certain CDs that had been owned by Lannom, in order to satisfy any Tennessee gift tax liability that existed. On February 28, 1994, Rankin filed an answer denying that Lannom's transfer of the CDs from Lannom's name into both Lannom and Rankin's name was a taxable gift and denying that any property acquired by her from Lannom was subject to any lien. On November 5, 1996, a non-jury trial was conducted wherein Muller sought to subject the CDs to satisfaction of her subrogation claim resulting

4

in her payment of Lannom's 1991 gift tax liability. At trial, the parties submitted stipulated facts to the trial court. Thereafter, on November 6, 1996, the trial court entered a final judgment finding Muller's complaint to be without merit, thereby, dismissing her complaint. Muller filed her notice of appeal on November 8, 1996. This appeal followed.

## DISCUSSION

Ordinarily, when we review a finding of fact by the trial court, we must conduct our review de novo upon the record accompanied by a presumption of correctness, and we may reverse only if the evidence preponderates against the finding of the trial court. T.R.A.P. 13(d). However, this same presumption does not exist with regard to the trial court's legal determinations or when the trial court's conclusions are based on uncontroverted facts. Prost v. City of Clarksville, 668 S.W.2d 425, 427 (Tenn. 1985). In this case, the facts have been stipulated to by the parties, and the trial court dismissed Muller's complaint finding it to be without merit. No presumption of correctness attaches to decisions dismissing complaints because such decisions are legal determinations, and, as such, do not warrant a presumption of correctness by this Court. Thus, on appeal, this Court must review the findings of the trial court de novo without the accompanying presumption of correctness.

### I. Subrogation

At the heart of Muller's complaint is her prayer for subrogation resulting from her payment of Lannom's 1991 gift tax liability. Subrogation is the substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. Black's Law Dictionary 1279 (5th ed. 1979). In essence, Muller asserts that her payment of the gift tax obligation, created by the transfer of the farmland to her by her father, entitles her to be subrogated to the tax lien created in favor of the Department of Revenue. Therefore, Muller asked the trial court to declare the conveyance of the CDs to be fraudulent, to set aside said transfer, and to subject the funds from said CDs to an equitable lien or a constructive trust to the extent necessary to satisfy her

5

subrogation claim for payment of Lannom's 1991 gift tax liability.

It is undisputed that Lannom gave Muller a gift of 400 acres of real property located in Lake County, Tennessee. Likewise, it is also undisputed that Lannom encountered gift tax liabilities as a result of this gift under T.C.A. § 67-8-110. As a result of these liabilities, the Department of Revenue procured a gift tax lien against Lannom. However, we feel that, according to T.C.A. § 67-1-1403(d), the Department of Revenue's rights in Lannom's assets extended only as far as the affected farmland and no further. T.C.A. § 67-1-1403(d) provides:

> Notwithstanding any other provision of law to the contrary, the lien for taxes imposed by chapter 8, part 1 of this title shall arise at the date of gift and shall attach to any interest in property transferred and to any property acquired in exchange or substitution for any property transferred.

T.C.A. § 67-1-1403(d) (1994). Undoubtedly, a gift tax lien arose on August 12, 1991, when Lannom made a gift of the 400 acres of real property to Muller. However, according to T.C.A. § 67-1-1403(d), this lien attached only to the subject farmland. Lannom's other assets, including the CDs, were not the subject of this lien, and, thus, the Department of Revenue had no further rights in Lannom's assets. As such, there can be no subrogation rights on the part of Muller.

## II. Fraudulent Conveyance

Within her claim for subrogation, Muller beseeched the trial court to declare Lannom's transfer of the CDs to Rankin to be a fraudulent conveyance. Whether a transfer is fraudulent is determined by the facts and circumstances of each case. In Tennessee, there are two ways a plaintiff can prove the fraudulent nature of a certain conveyance. The first is under T.C.A. § 66-3-305. To make a conveyance fraudulent against creditors it must be made without a fair consideration leaving the grantor insolvent. T.C.A. § 66-3-305 (1994); See Hicks v. Whiting, 258 S.W.2d 784 (Tenn. 1924); Ottarson v. Dobson & Johnson, Inc., 430 S.W.2d 873 (1968). We recognize that Rankin gave no consideration for the conveyance of the CDs. However, no evidence was produced which

6

indicated that the transfer of the five CDs rendered Lannom insolvent.[2]  On the contrary, the evidence reveals that Lannom was receiving $950 per month in social security, had a life estate in approximately 250 acres of farmland from which he received a gross annual crop rent of $21,200 in 1991 and $24,500 in 1992, paid cash for an automobile, and had in excess of $18,000 in a checking account.  Additionally, the affidavit of value filed with the recording of the deed of the life estate states the worth of Lannom's life estate to be $174,636.  All of these assets were more than sufficient  to cover Lannom's gift tax liabilities.  Further, there is no proof in the record that Lannom owed any additional debts. We find that Muller has failed to prove that the conveyance of the CDs was fraudulent under T.C.A. § 66-3-305.

The second way to prove a conveyance was fraudulent is under T.C.A. § 66-3-101. In order to prove a conveyance was fraudulent under this provision, a plaintiff must prove that the conveyance was made with the actual intent to hinder, delay, or defraud creditors. Macon Bank and Trust Co. v. Holland, 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986). Gibson's Suits in Chancery, (5th ed. 1955) § 1057, p. 328 states:

> Inasmuch as frauds are generally secret, and have to be tracked by the footprints, marks, and signs made by the perpetrators, and discovered by the light of the attending facts and circumstances, these evidences are termed 'badges of fraud.'[3]

We find the record deficient of any such "badges of fraud" that are indicative of an intent to delay, hinder, or defraud creditors.  Rankin claims that the remainder of his estate was left to her in order to provide for her after his death.  This reasoning is supported by Lannom's creating a joint tenancy with Rankin in the CDs.  We agree that this would be a legitimate motivation for creating the joint tenancy in the CDs.  Muller has the burden to prove that Lannom's conveyance of the CDs was actually intended to delay, hinder, or defraud creditors and not to provide for his second wife after his death.  Muller's proof does

---

[2]T.C.A. § 66-3-302 provides the test for when a person has reached "insolvency:"  "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

[3]A more animated description of these "badges" is found in Floyd v. Goodwin, 16 Tenn. 484: "[Fraud] therefore has to be ferreted out by carefully following its marks and signs; for fraud will, in most instances, though never so artfully and secretly contrived, like the snail in its passage, leave its slime by which it may be traced."

not qualify by the foregoing standard.

## III.  Constructive Trust

An additional component of Muller's brief is that the proceeds from Rankin's five CDs should be subject to either an equitable lien or a constructive trust.  As an alternative to her prayer for an equitable lien, Muller requested that the trial court set aside the CDs, and the proceeds therefrom, in a constructive trust in order to satisfy her subrogation claim for the payment of Lannom's 1991 gift tax liability.  A constructive trust arises by operation of law against one holding or obtaining the legal right to property not equitably his or hers where the property was acquired by fraud, actual or constructive, or by duress or abuse of confidence, commission or wrong or any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience either has obtained or holds legal title to property which he ought not, in equity and good conscience, to hold and enjoy.  Rutherford County v. City of Murfreesboro, 304 S.W.2d 635, 638 (Tenn. 1957); Livesay v. Keaton, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980).

The facts and evidence in the record do not lend themselves to a finding of fraud, duress, or unconscionable conduct by either Lannom or Rankin.  The record is replete with allegations by Muller, among some of which are that Rankin induced Lannom to abandon radiation treatments, to convey the CDs and other assets to her, and to not file a Tennessee gift tax return.  Muller also alleges that Rankin isolated Lannom from his family, interposing herself between Muller and her father.  As mentioned above, Muller failed to set forth the necessary evidence to verify these allegations and establish the need for a constructive trust.  The record is sorely lacking the necessary evidence to prove that Rankin procured the CDs from Lannom by fraud, duress, or any unconscionable act.  We refuse to find fraud, duress, or unconscionable acts sufficient to merit the imposition of a constructive trust when such acts have been presented as mere  allegations without the necessary accompanying proof in the record.

## IV. Equitable Lien

An equitable lien is a right, not existing at law, to have specific property applied in whole or in part to payment of a particular debt or class of debts. Black's Law Dictionary 483 (5th ed. 1979). It is not an estate or property in the thing itself, nor is it a right to recover the thing; that is, it is not a right which may be made the basis of a possessory action, but is merely a charge upon it. Greer v. American Security Insurance Co., 445 S.W.2d 904, 907 (Tenn. 1969); See Allen v. Cunningham, 143 Tenn. 11, 223 S.W. 450 (Tenn. 1919). An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation or is implied and declared by a court of equity out of general considerations of right and justice as applied to relations of the parties and circumstances of their dealings. Black's Law Dictionary 483 (5th ed. 1979). In the absence of an express contract, a lien is based upon the fundamental maxims of equity and may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings. Greer, 445 S.W.2d at 907. There must be an intent to make the particular property, real or personal, a security for the obligation. Id. An equitable lien cannot be founded merely upon moral obligations alone, but must find a basis in established equitable principles. Id.; See also Stansell v. Roach, 147 Tenn. 183, 246 S.W. 520 (Tenn. 1922).

After an exhaustive examination of the record, we find the record devoid of any evidence that Lannom intended the five CDs to be a security for the obligation to pay the his gift tax liabilities. In fact, at the time of his death, Lannom's gift tax liabilities had not been assessed against him, and there is no evidence that Lannom was cognizant of such gift tax liabilities. We do not believe Lannom intended for the CDs to be used in satisfaction of a debt of which he was not aware.

As a final matter, we feel that it is imperative to note that Lannom conveyed the real property to Muller via a quitclaim deed. A quitclaim deed is a deed of conveyance operating by way of release that is intended to pass any title, interest, or claim which the

9

grantor may have in the premises, but not professing that such title is valid, nor containing any warranties or covenants of title. Where real property is conveyed by deed without warranties, the vendee or donee has no claim upon the vendor or donor for money expended in discharging encumbrances upon the property. See Jobe v. O'Brien, 21 Tenn. (2 Hum.). According to T.C.A. § 67-1-1403(d), a gift tax lien arose at the moment Lannom made a gift of the land to Muller. Undoubtedly, this is an encumbrance. It is undisputed that Muller accepted the real property from Lannom. As such, she accepted the property "as is" with the accompanying gift tax lien. According to Jobe, Muller is without claim for reimbursement from Lannom's estate for the gift tax encumbrance that accompanied the land.

We find it interesting that Lannom quitclaimed his interest in the real property to Muller. As such, Lannom conveyed only what interest he had in the land, and Muller took the land subject to encumbrances thereon. Had Lannom conveyed the land by a general warranty deed, undoubtedly, Muller could have had a cause of action to enforce the warranties and covenants which apply thereto. However, a quitclaim does not carry such warranties or covenants. If anything, Lannom's conveyance of the land by quitclaim manifests his intent to not subject his other assets to the gift tax liabilities. Viewing the record in its entirety, we find no proof that Lannom intended the CDs to be used as satisfaction for his gift tax obligations.

In summary, Muller appeals to this Court asking that we either set aside the transfers of the CDs as fraudulent conveyances or rule that Rankin acquired an interest in said CDs subject to an equitable lien or a constructive trust in favor of Muller. Thereafter, Muller importunes this Court to subject the CDs, as well as their proceeds, to the payment of Muller's subrogation claim of indemnification for her payment to the Tennessee Department of Revenue of Lannom's 1991 gift tax liability. We decline to do so, and hereby affirm the decision of the trial court.

All costs, including costs of this appeal, are assessed to the plaintiff for which

10

execution may issue if necessary.


                                         _____

                                         HIGHERS, J.


CONCUR:


_____

FARMER, J.


_____

LILLARD, J.