**MACON BANK AND TRUST COMPANY, Plaintiff,**

v.

**Ruby Lee HOLLAND, James Lee Holland, Sue Claiborne and Mai Coffey, Defendants.**

Court of Appeals of Tennessee, Western Section, at Nashville.

May 6, 1986.

Permission to Appeal Denied by Supreme Court July 21, 1986.

James W. Chamberlain, Lafayette, for plaintiff.

Joe P. Lane, Jr., Carthage, for defendants.

HIGHERS, Judge.

This case involves the question of whether the transfer of real property by a surety on three promissory notes is a transfer in fraud of creditors.

Ruby Holland signed as surety on three promissory notes executed by her daughter, Barbara Lankford, to the plaintiff, Macon Bank and Trust Company. Ms. Lankford was in the business of selling wood stoves, and these notes were used to finance inventory and to pay existing debts of the business. The dates and amounts of the notes were as follows: (1) December 20, 1978, for $3,000; (2) March 29, 1980, for $5,694.67; and (3) February 21, 1981, for $8,196.36. The bank testified that they discussed the delinquency of these notes with Mrs. Holland sometime around the end of 1981. The last payments on these notes, respectively, were made: (1) November 10, 1982; (2) September 18, 1982; and (3) October 30, 1982. Mrs. Holland also through the years had loaned Barbara approximately $10,000 for living expenses, house down payment, and business ventures. The bank made demand on Mrs. Holland in February 1983. Barbara declared bankruptcy in March 1983.

Mrs. Holland was hospitalized in August 1981 for a transient ischemic attack as well as high blood pressure. Her son testified that her health problems extended back at least 15 to 20 years. During this hospitalization, Mrs. Holland discussed with her son, James Lee Holland, the possibility of conveying her house to him and to her other two daughters, Sue Claiborne and Mai Coffey. A deed was drawn up on September 29, 1981, in which the house was conveyed to these three children for consideration of $1.00 and with a reservation of a life estate in Mrs. Holland. Mrs. Holland had one other daughter, Juna Faye Hannah, who died several years prior to this conveyance. Juna Faye had a daughter, Lisa. Lisa was not included in the deed. Mrs. Holland did testify, however, that she was close to her granddaughter who now lives in Colorado. The value recited in the deed was $23,300.00. The deed was not recorded until November 1981. Both Sue and Mai testified that they did not know about the deed until after it had been drafted. The house constituted substantially all of Mrs. Holland's assets. She continued paying insurance and taxes on the property after the transfer. Mrs. Holland, as well as all of the children, testified that the conveyance was made for three reasons: (1) Mrs. Holland was in poor health and anticipating open heart surgery; (2) Mrs. Holland had financially assisted Barbara more than the other children and wanted to even things up; and (3) Mrs. Holland anticipated needing help from these children who all lived close by. Mrs. Holland's open heart surgery was not until December 1981. It was stipulated that the doctor who was caring for her in August and September 1981 would testify that he treated her for high blood pressure and transient ischemic attack but that he did not advise her to have open heart surgery because that was not his field of specialty. He, however, may have advised her to consult a cardiologist although his records do not reflect giving such advice.

The plaintiff brought suit alleging a transfer in fraud of creditors. After trial, the Chancellor ruled that because there were badges of fraud in the transaction, the burden shifted to the defendants to make a satisfactory explanation for the transfer. Although indicating that it was a close question, the Chancellor ruled that from the preponderance of the evidence, the defendants had carried their burden of

proof. He ordered that the transaction not be set aside, but granted plaintiff a monetary judgment against Mrs. Holland for the amount of the notes plus interest and fees.

 To make a conveyance fraudulent against creditors, it must be made without a fair consideration leaving the grantor insolvent or it must be made with actual intent to hinder, delay, or defraud creditors. *Hicks v. Whiting*, 149 Tenn. 411, 258 S.W. 784 (1924); *Ottarson v. Dobson & Johnson, Inc.*, 58 Tenn.App. 408, 430 S.W.2d 873 (1968). A surety is also prohibited from making a fraudulent conveyance. *Russell v. Stinson*, 4 Tenn. 1 (1816). No evidence was produced at trial indicating that the transfer rendered Mrs. Holland insolvent. (T.C.A. § 66–3–302 gives the test for insolvency: "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.") Therefore, T.C.A. § 66–3–305 that states, "Every conveyance made ... by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration," is inapplicable. Rather, it is T.C.A. § 66–3–101 that applies. That statute states:

Conveyances in fraud of creditors or purchasers void.—Every gift, grant, conveyance of lands, tenements, hereditaments, goods, or chattels, or of any rent, common or profit out of the same, by writing or otherwise; and every bond, suit, judgment, or execution, had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures; or to defraud or to deceive those who shall purchase the same lands, tenements, or hereditaments, or any rent, profit, or commodity out of them, shall be deemed and taken, only as against the person, his heirs, successors, executors, administrators, and assigns, whose debts, suits, demands, estates, or interest, by such guileful and covinous practices as aforesaid, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, of any other matter or thing, to the contrary notwithstanding.

 Whether a transfer is fraudulent is determined by the facts and circumstances of each case. Gibson's *Suits in Chancery*, (5th Ed.1955) § 1057, p. 328, states: "Inasmuch as frauds are generally secret, and have to be tracked by the footprints, marks, and signs made by the perpetrators, and discovered by the light of the attending facts and circumstances, these evidences are termed 'badges of fraud.'" (A more colorful description of these "badges" is found in *Floyd v. Goodwin*, 16 Tenn. 484: "[Fraud] therefore has to be ferreted out by carefully following its marks and signs; for fraud will, in most instances, though never so artfully and secretly contrived, like the snail in its passage, leave its slime by which it may be traced.") A "badge of fraud" is any fact that throws suspicion on the transaction and calls for an explanation. Where the circumstances of a transfer of property by a debtor are suspicious, the failure of the parties to testify or to produce available explanation or rebutting evidence is a badge of fraud. *Union Bank v. Chaffin*, 24 Tenn.App. 528, 147 S.W.2d 414 (1940).

 We agree with the Chancellor that there are badges of fraud associated with this transfer: (1) the inadequate consideration; (2) the relationship of the parties; (3) the giving away of relatively all of Mrs. Holland's property; (4) the retention of a life estate. These facts threw the burden of going forward with proof of an explanation on the defendants. *Gurlich's Inc. v. Myrick*, 54 Tenn.App. 97, 388 S.W.2d 353 (1964), *Nashville Milk Producers, Inc. v. Alston*, 43 Tenn.App. 257, 307 S.W.2d 66 (1957). The Chancellor found that the defendants' explanation rebutted these badges of fraud. The weight to be

given to any of these badges is a question for the jury or the Chancellor. The scope of this Court's review of the Chancellor's findings of fact is "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." T.R.A.P. 13(d). We cannot say that the Chancellor erred in finding that the evidence preponderated in favor of the defendants' explanation. The judgment of the Chancellor is, therefore, affirmed. Costs are adjudged against the appellant.

TOMLIN and CRAWFORD, JJ., concur.