# IN THE COURT OF APPEALS OF TENNESSEE

## AT KNOXVILLE

**FILED**

**July 9, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| PHYLLIS ANN FRAZIER HAMBY, | ) C/A NO. 03A01-9708-CV-00340 |
| | ) |
| Plaintiff-Appellant, | ) POLK CIRCUIT |
| | ) |
| v. | ) HON. JOHN B. HAGLER, |
| | ) JUDGE |
| JOSEPH DEWIGHT HAMBY and | ) |
| ANTHONY HAMBY, | ) AFFIRMED |
| | ) AND |
| Defendants-Appellees. | ) REMANDED |

GRACE E. DANIELL, STARR & DANIELL, Chattanooga, for Plaintiff-Appellant.

CHARLES B. BURNS, JR., VARNELL, BURNS & SHARP, P.C., Cleveland, for Defendant-Appellee Anthony Hamby.

ROGER E. JENNE, JENNE, SCOTT & JENNE, Cleveland, for Defendant-Appellee Joseph Dewight Hamby.

# O P I N I O N

Franks, J.

In this divorce action, the wife appeals from the Trial Court's Order of child support and the evaluation of the marital estate and its distribution.

Husband and wife were married in 1976 and have two minor children. They separated in August 1994, and at the time of trial the husband was 43 and the wife was age 40.

The husband holds an associate degree in respiratory therapy, while the wife has an associate degree in nursing. The wife worked full time until the birth of their first child. After terminating her employment in 1987, she began working part-

time in 1988.  The husband works as a respiratory therapist at Copper Basin Medical Center in Cleveland.  He also owned a one-half interest in Cleveland Home Respiratory Care Inc., which he co-owned with his brother, defendant Anthony Hamby.  This business provides and services respiratory care equipment for patients' use in their own homes.

The wife filed this action on September 16, 1994, and on November 16, 1994, effective as of October 31, 1994, the husband sold his 50% interest in Cleveland Home Respiratory Care, Inc., to his brother for $100,000.00.  The wife then amended her complaint to add the brother as a defendant.

After trial, the Trial Court awarded custody of the two minor children to the wife and ordered the husband to pay $600.00 per month child support.  The Court also held that the husband was to serve as custodian for investment accounts for the children.  The Court also valued husband's interest in Cleveland Home Respiratory at the amount he was paid for his stock.

The wife contends that the Trial Court erred in setting the child support at $600.00 per month.  First, she contends that the Trial Court should have based payments on an annual income in excess of $200,000.00, rather than the $32,914.00 that the husband earned as a respiratory therapist, and further, even if the husband's income was only the amount of his salary, the Trial Court erred because it made a downward deviation from the Child Support Guidelines without giving written reasons for the deviation.

The husband earned a much larger income when he was part owner of the business, but he testified that he sold his share of the business because of long hours and his desire to spend more time with his children, and at the time of the divorce his only income was his salary as a respiratory therapist.  Additionally, he offered medical testimony that he was depressed before the sale and was advised to

2

reduce his workload. The Trial Court determined that "Mr. Hamby certainly was depressed clinically, as the medical evidence shows, that he was overworked when he sold his share of the business." The Child Support Guidelines provide that if an obligor is "willfully and voluntarily" underemployed, child support is to be calculated based on a determination of potential income. Tenn.Comp.R.& Regs. 1240-2-4-.03 (3)(d). The Trial Court did not consider the sale of the business as a "willfully and voluntarily" move to become under-employed. The Trial Judge credited the reasons given by the husband, as well as the medical testimony, as a basis for his actions, and we cannot say the evidence preponderates against these findings.

The wife argues that the Trial Court made no written findings to support his variance from the guidelines as required by T.C.A. § 36-5-101. The transcript, however, shows that the Trial Court was aware of the deviation. The Court noted that although the child support amount deviated slightly from the guidelines, "that's justified considering the amount of time that the non-custodial parent is spending with the children."

The parties offered differing estimates of the time that the husband spent with the children. The wife estimated that it was only a third of the time, while the husband testified that it was closer to one-half. The guidelines, in pertinent part, provide that they are:

> designed to apply in situations where children are living primarily with one parent but stay overnight with the other parent at least as often as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year . . . In situations where overnight time is divided more equally between the parents, the courts will have to make a case-by-case determination as to the appropriate amount of support. 1240-2-4-.02(6).

Thus, "[d]eviation from the guidelines may be appropriate . . . where physical custody of the child(ren) is more equally divided . . ." 1240-2-4-.04(2). While the Trial Court did not make a written finding on this issue, the transcribed record shows the reason

for the deviation. This Court has held that an "oral pronouncement by the court subsequently transcribed" may suffice to avoid sending a case back to the trial court "solely for the purpose of written findings." *Koch v. Koch.*, 874 S.W.2d 571, 578 (Tenn.App. 1993). The evidence does not preponderate against the Trial Court's determination, T.R.A.P. Rule 13(d).

Appellant argues that the Trial Court erred in establishing the value of Cleveland Home Respiratory Care, and argues that the transfer was a fraudulent conveyance. A conveyance is fraudulent if it is made without fair consideration, leaving the grantor insolvent or if the conveyance was made with the actual intent to hinder, delay or defraud creditors. *Macon Bank and Trust Co. v. Holland*, 715 S.W.2d 347, 349 (Tenn.App. 1996); *See also* T.C.A. §§ 66-3-305, 66-3-308. Whether a transfer is fraudulent is determined by the particular facts and circumstances of each case. *Macon Bank*, at p. 349.

The value of marital property is a fact question. *Wallace v. Wallace*, 733 S.W.2d 102,107. (Tenn.App. 1987). The burden is on the parties to produce competent evidence of value, and they are bound by the evidence they present. *Id.* The trial court is free to place a value on a marital asset that is within the range of evidence submitted.

In this case, the parties presented testimony from three experts concerning the value of the business. The wife offered the testimony of an accountant, who testified that the fair market value of the company was $1,189,860.00 on the date of sale. The husband offered the testimony of Harry Trewhitt, who served as accountant for the corporation and Ronald Arnett, who made an independent evaluation. Trewhitt valued the corporation at $181,987.00, and Arnett valued the corporation at $288,000.00.

This Court has noted that "[d]etermining the value of a closely held

4

corporation is not an exact science." *Wallace*, 733 S.W.2d at 107. In *Wallace*, the Court cited factors for the court to consider when determining a closely held corporation's value. The Trial Court took the relevant factors into account in assigning a value to the husband's interest in the corporation. The experts had differing views concerning the nature of the business, the proper method of valuation and how important the individual skill and contacts of the husband were to its success. Moreover, the experts differed on their projections for the future stability of the industry. The Trial Court made an extensive analysis and assigned a value that was within the range of evidence submitted. The evidence does not preponderate against this determination. T.R.A.P. Rule 13(d).

The Court concluded the transaction was not fraudulent and determined that Anthony Hamby had paid fair consideration of $100,000.00 for his brother's interest. The husband also retained a storage facility that had been built with corporate funds.

The Trial Court noted that "[t]here's no doubt there's some red flags here." He noted that the transaction involved a sale to a family member without a noncompete agreement and must be "carefully scrutinized." The Trial Court found Anthony Hamby "to be a very credible witness." "The weight, faith and credit to be given the witnesses' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." *Whitaker v. Whitaker,* 957 S.W.2d 834, 837 (Tenn.App. 1997. The trial court found that "[t]he wife has shown no evidence of fraud . . . except for those red flags, but other than that there's no evidence whatsoever that there was any fraud involved in this transaction or that $100,000 was not a fair consideration for this business." The weight to be given to any particular "badges of fraud" is generally a question for the trial court. *Macon Bank,* 715 S.W.2d at 349-50. The evidence does not preponderate against the trial

5

court's decision.

Next, the wife contends that the Trial Court erred in dividing the parties' estate. Trial courts have broad discretion in dividing marital estates. *Kincaid v. Kincaid,* 912 S.W.2d 140, 142 (Tenn.App. 1995). We generally do not disturb a trial court's division unless "the distribution lacks proper evidentiary support or results from an error of law or a misapplication of statutory requirements and procedures." *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn.App. 1990).

T.C.A. § 36-4-121(a)(1) provides that marital property shall be divided equitably, without regard to fault. An equitable division, however, is not necessarily an equal one. *Batson v. Batson*, 769 S.W.2d 849 (Tenn.App. 1988). In reaching a decision, a trial court should not mechanically apply the factors listed in § 36-4-121 but rather consider the most relevant factors in light of the unique facts of each case. *Id.* In this case, the Trial Court basically adopted the husband's Proposed Distribution of Marital Assets, with some modifications. In their briefs, the parties provide differing totals for each share. Based on the values set forth, and the other items included in the trial court's order, the wife's share totaled approximately $276,893.50 while the husband's share was approximately $320,686.50.

As the Trial Court found, both parties are of similar age and educational level. The Trial Court also found that the parties' earning capacities were relatively equal. The record shows that Joseph Hamby was a founder of Cleveland Home Respiratory Care, and worked diligently to make the company a success. He also worked at Copper Basin Medical Center as a respiratory therapist. While the wife was not directly involved in running the company, the trial court found that she made "great tangible and intangible contributions to this marriage over the years." The Trial Court considered the factors in T.C.A. § 36-4-121 in reaching its decision, and we

6

conclude that the Trial Court made an equitable distribution of the marital property.

Finally, the wife argues that the Trial Court erred in allowing the husband to continue to serve as custodian for accounts which he set up for the minor children. The record contains no evidence that the husband was guilty of any misconduct in managing these accounts. Additionally, the Trial Court provided safeguards for distributions from the accounts. We find no basis to disturb the Court's ruling on this issue, as well.

The judgment of the Trial Court is affirmed and the cost of the appeal is assessed to the appellant, and the cause remanded.

_____

_____
Herschel P. Franks, J.

CONCUR:

_____
Charles D. Susano, Jr., J.

_____
William H. Inman, Sr.J.

7