# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 14, 2005 Session

## GUY G. BIGGER, JR., ET AL. v. ANTHONY I. FIELDS, GUY M. FIELDS, PATRICK E. SMITH, ET AL.

**Appeal from the Chancery Court for Marshall County**
**No. 12250 , J. B. Cox, Chancellor**

---

**No. M2004-01489-COA-R3-CV- Filed August 24, 2005**

---

As found by the trial court, appellant, Guy G. Bigger, Jr., was defrauded by Anthony Fields and Guy Fields with regard to the sale of a 332 acre tract of land in Marshall County, Tennessee. The Fields' conveyed a portion of the tract to the appellee, Patrick Smith. Mr. Bigger brought suit seeking, among other things, to set aside the Fields' deed to Mr. Smith alleging it to be a fraudulent conveyance. The trial court found Mr. Smith to be a bona fide purchaser who gave adequate consideration for the transfer and denied relief as to Smith. Mr. Bigger appealed challenging the findings of the trial court. We find the evidence does not preponderate against the trial court's findings and affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

DONALD P. HARRIS, SR. J., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT JR., JJ, joined.

William L. Abernathy, Jr., Shelbyville, Tennessee, for the appellant, Guy G. Bigger, Jr.

C. Dewees Berry, IV, Nashville, Tennessee, and Kristen J. Hazelwood, Nashville, Tennessee, for the appellee, Patrick E. Smith

## OPINION

### I. FACTUAL BACKGROUND.

The plaintiff, Guy G. Bigger, Jr., dropped out of school in the ninth grade at age 16. At age 18, his father died leaving him a 332 acre tract of land in Marshall County, Tennessee. In October 2001, when he was 20 years of age and inexperienced in real estate transactions and handling financial affairs, Bigger was approached by Anthony Fields who indicated his company, Guyco Timber Company, might be interested in purchasing the timber off the tract of land Bigger had

inherited. Guyco Timber Company was owned by Anthony Fields and his brother, Guy Fields. A short time later, Bigger and Anthony Fields traveled to Marshall County to look at the property. Fields made Bigger offers to buy just the timber or the entire farm. Bigger elected to sell the entire farm and, on November 2, 2001, the parties entered into a written agreement in which the Fields' agreed to purchase the farm for $182,440.50. According to the agreement, the purchase price, after a $2000.00 down payment, was to be paid biweekly based upon timber prices and, if the monies received from the sale of timber did not satisfy the purchase price, the balance was to be paid at the rate of $850.00 per month. The agreement contained no provision for interest.

Also on November 2, 2001, Bigger executed a warranty deed conveying the 332 acre tract to Anthony I. Fields and Guy M. Fields. The affidavit of consideration on the deed stated the actual purchase price to be $155,000.00. The deed was recorded in the Register's Office for Marshall County, Tennessee, on November 7, 2001. No note or deed of trust was prepared and the written agreement was not recorded. On November 3, 2001, Bigger executed a power of attorney giving Fields the right to open a savings account in Fields' name for the money Bigger was to receive from the sale of the land in Marshall County and giving Fields "total and complete control" over the account. The power of attorney further provided that statements for the savings account would go to the address of Anthony Fields. There is no evidence such an account was ever established and, except for the $2000.00 down payment, Bigger has not received any of the $182,440.50 purchase price.

On November 29, 2001, Fields and Jim Floyd, a local Century 21 real estate agent, approached Patrick Smith about purchasing a portion of the 332 acre tract. Smith earned his living buying, selling and renting real property. He bought houses in need of repair and renovated them to sell or rent. He sometimes bought property from owners who were unable to pay their mortgages or, for some other reason, needed money. He had also bought a few undeveloped tracts. He maintained a line of credit at the Bank of Frankewing in Giles County, Tennessee, to enable him to purchase property on a cash basis.

Fields indicated to Smith that he needed money to pay his logging crew, to purchase logging equipment and to cover expenses for subdividing a portion of the property into tracts for sale at auction. On December 4, 2001, after Smith had reviewed the deeds to the property and discussed the matter with local real estate agents, an attorney and his banker, Smith and Fields entered into an agreement for the sale of 210 acres from the tract to Smith for a consideration of $50,000.00. The agreement recited that Fields and his brother were "seized in fee" of the property they agreed to sell. The agreement further provided that the Fields would be allowed to continue logging the property and would be allowed to enter the property to "excavate, clear, grade, construct roads and do all things necessary and proper to prepare the property for sale at private sale or auction." Finally, the Fields were given, in the agreement, a six month option to repurchase the property for $100,000.00.

Pursuant to the agreement, Fields transferred to Smith 210 acres of the property. The sum of $50,000.00 was paid by Smith, $30,000.00 directly to Fields and $20,000.00 into an escrow account at Century 21 to be used for expenses to be incurred in subdividing the property.

Bigger brought suit on February 5, 2002, seeking to have the Bigger to Fields and the Fields to Smith deeds set aside as fraudulent. The trial court held that Smith purchased the land from Fields in good faith and paid an adequate consideration. As a bona fide purchaser, the trial court concluded that Smith took title to the land free of any claim of Bigger. Bigger has appealed that ruling.

## II. STANDARD OF REVIEW.

We review this case de novo on the record with a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). No presumption of correctness attaches to the trial court's decisions regarding questions of law. *Wilson v. Wilson*, 984 S.W.2d 898, 900 (Tenn. 1998).

## III. ANALYSIS.

The statutes governing fraudulent transfers existing at the time of the Fields to Smith transfer and the cases interpreting them, may be summarized as providing that a plaintiff could establish a fraudulent conveyance by three methods: (1) by proving actual fraudulent intent, (2) by proving inadequate consideration coupled with the grantor's insolvency, anticipated insolvency or inadequate capital to engage in a business or transaction, and (3) by proving circumstances creating a presumption or inference of fraud that are not successfully rebutted or explained.

1. *Actual fraudulent intent.*

Tennessee Code Annotated section 66-3-308[1] at the time provided that every conveyance made with actual intent, as distinguished from intent presumed by law, to hinder, delay or defraud either present or future creditors is fraudulent.

It is important to note that cases interpreting this code section as well as Tennessee Code Annotated section 66-3-101, discussed below, have held that even where the grantor conveyed property with fraudulent intent, creditors cannot attack the conveyance where the grantee gave fair consideration and had no knowledge or notice of the grantor's fraudulent intent. *E-Z Trail, Inc. v. Broyles*, No. 87-50-II (Tenn. Ct. App., filed July 1, 1987); *First National Bank v. Wilkins*, 11 Tenn. App. 9 (1987); *Gregory v. Guinn*, 4 Tenn. App. 10 (1926). These holdings were in accord with Tennessee Code Annotated section 66-3-310, as it existed at the time of the purported transfer in this case and provided:

> Remedies of creditor on matured debt. - Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when the claim has matured, may, as against any person *except a purchaser for fair consideration without knowledge of the fraud at the time of purchase, or one who has derived title immediately or mediately from such purchaser*:

---

[1]The provisions of this code section are now included in Tenn. Code Ann. § 66-3-305.

(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy the creditor's claim; or

(2) Disregard the conveyance and attach or levy execution upon the property conveyed. (emphasis added).

In the case before us, there is no evidence that Mr. Smith intended to hinder, delay or defraud creditors of Fields by purchasing a portion of the land Fields had recently acquired. In fact, there is no evidence Smith even knew that Bigger was a creditor of Fields. The warranty deed from Bigger to Fields was recorded with no deed of trust or other evidence of debt appearing in the chain of title. The appellant has offered no basis for suggesting that Smith knew that Fields owed Bigger money at the time of he purchased the property.

2. *Lack of fair consideration coupled with insolvency, anticipated insolvency or inadequate capital to engage in business or transaction.*

Tennessee Code Annotated section 66-3-305 provided conveyances made without fair consideration that will render the grantor insolvent are fraudulent as to creditors without regard to the grantor's actual intent.[2] Tennessee Code Annotated section 66-3-302 provided that a person was insolvent when the value of the person's present assets was less than the liability on their existing debts as they became mature.[3] Tennessee Code Annotated section 66-3-306 provided every conveyance made without fair consideration when the grantor was about to engage in a business or transaction for which their remaining property, after the conveyance, left unreasonably small capital was fraudulent as to creditors.[4] Tennessee Code Annotated section 66-3-307 provided a conveyance made without fair consideration when the grantor believed that debts would accrue beyond his or her ability to pay as they mature was fraudulent as to both present and future creditors.[5]

In the case before us, Smith admittedly knew that Fields needed money quickly. He was told that Fields intended to log the property and then subdivide it for sale at auction. Smith was also informed that Fields had a logging crew that he needed to pay, needed to purchase additional logging equipment and needed money to defer the costs of subdividing the property for sale at auction, including dozer work, installation of roads, and surveying costs. Smith agreed to pay Fields the sum of $50,000.00 in cash, allow Fields to continue logging the property and give to Fields a six-month option to repurchase the property for $100,000.00 in exchange for a deed to the 210 acres. Given these circumstances, the trial court found Smith gave adequate consideration for the transfer of the property and that Smith acted in good faith in purchasing the property.

---

[2] A similar provision is now included in Tenn. Code Ann. § 66-3-306.

[3] Insolvency is now defined in Tenn. Code Ann. § 66-3-303.

[4] This subject matter is now addressed in Tenn. Code Ann. § 66-3-305.

[5] This subject matter is now addressed in Tenn. Code Ann. § 66-3-305.

Tennessee Code Annotated § 66-3-304 (2001) defines fair consideration as "in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied."  In determining whether consideration is inadequate, courts do not apply a mathematical formula but consider the circumstances of the particular case. *Meacham v. Haley*, 38 Tenn. App. 20, 270 S.W.2d 503 (Tenn. Ct. App. 1954).  While the term 'fair consideration' cannot be precisely defined, the consideration given should fall within the range that reasonably intelligent persons who have had experience in and know something about the business in which the property valued is used or will be used would place on the transaction.  *Meacham*, 270 S.W.2d at 507.  The trial court found that Smith's understanding that he could make about $50,000.00 by providing Fields cash to facilitate the continued logging operation and to subdivide the property for sale at auction amounted to a fair consideration.  Applying the standard of reasonableness we have set out, we cannot say that the evidence preponderates against the finding of the trial court in this regard.  Consequently, the statutes that apply to transactions made without fair consideration resulting in insolvency, anticipated insolvency or the entry into a business or transaction with insufficient capital do not apply in this case.

3. *Circumstances creating a presumption or inference of fraud that are not successfully rebutted or explained.*

Tennessee Code Annotated section 66-3-101 provides that a conveyance of land made with the intent or purpose to delay, hinder or defraud creditors is void.  A determination as to whether a conveyance is fraudulent is dependent upon the facts and circumstances of each case.  Because fraud is usually secret and actual fraud is difficult to prove, such fraud is typically proven by circumstantial evidence. *Macon Bank & Trust Co. v. Holland*, 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986).  Circumstantial indicators of fraud are often termed "badges of fraud" and have been described as "any facts that throw suspicion on the transaction and call for an explanation." *Id.*  Courts in Tennessee have held that the following circumstances are considered badges of fraud:

1. The transferor is in a precarious financial condition.

2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.

3. Inadequate consideration was given for the transfer.

4. Secrecy or haste existed in carrying out the transfer.

5. A family or friendship relationship existed between the transferor and the transferee(s).

6. The transfer included all or substantially all of the transferor's nonexempt property.

7. The transferor retained a life estate or other interest in the property transferred.

8. The transferor failed to produce available evidence explaining or rebutting a suspicious transaction.

9. There is a lack of innocent purpose or use for the transfer.

*Nadler v. Mountain Valley Chapel Business Trust*, No. E2003-00848-COA-R3-CV (Tenn. Ct. App., filed June 30, 2004), *citing*, *Stevenson v. Hicks (In re Hicks)*, 176 B.R. 466, 470 (Bankr. W.D. Tenn. 1995). The presence of one or more of the badges of fraud gives rise to a presumption of fraud and consequently shifts the burden of disproving fraud to the defendant. *Macon Bank*, 715 S.W.2d at 349; *Union Bank v. Chaffin*, 24 Tenn. App. 528, 147 S.W.2d 414 (1940)l; *Nichols v. Hite*, C.A. No. 125 (Tenn. Ct. App., filed January 20, 1989).

When reviewing the trial court's handling of "badges of fraud" under the circumstances of this case, it is important to recognize that they are to be considered from Mr. Smith's viewpoint. As previously stated, whatever the intent of Fields, if Smith entered into the transaction in good faith, gave adequate or fair consideration and had no knowledge or notice of the grantor's fraudulent intent, then the conveyance cannot be attacked by creditors. The trial court found two "badges of fraud" to apply, that secrecy or haste existed in carrying out the transfer, and that the transferor retained an interest in the property.

The trial court recognized there was no secrecy involved in the transaction since Mr. Smith discussed it with real estate agents, an attorney and his banker prior to closing. With regard to haste, the trial court noted that Mr. Smith had the ability to close quickly. Smith is in the business of buying and selling real estate. He maintained a line of credit to facilitate purchases knowing that the ability to offer cash frequently resulted in better deals for him. The trial court felt these circumstances satisfactorily explained the quickness with which the transaction was completed. The evidence does not preponderate against the finding of the trial court as to this issue.

The trial court also found Smith had successfully rebutted the presumption of fraud that resulted from the Fields' retaining an interest in the property. Smith understood that Fields needed money to complete logging the property and to prepare the property for subdividing. The fact that $20,000.00 of Smith's purchase money was paid into an escrow account to defer the costs of subdividing the property would indicate Fields intended to proceed with his plan as he explained it to Smith. The agreement between Fields and Smith provided for an option for Fields to repurchase the property for $100,000.00. We agree with the trial court's finding that Smith had rebutted this presumption of fraud.

The trial court found no other recognized "badge of fraud" applied to the Smith to Fields transaction. When viewed from the standpoint of what Mr. Smith knew or should have known, the evidence supports the trial court's conclusion.

### IV. CONCLUSION.

Because we find the evidence does not preponderate against the trial judge's findings, we affirm the judgment of the trial court and this matter is remanded with costs of appeal assessed against the appellant, Guy G. Bigger, Jr.


_____
DONALD P. HARRIS, Sr. J.