
IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2017 Session

# DELTA GYPSUM, LLC v. MICHAEL FELGEMACHER

**Appeal from the Chancery Court for Sullivan County**
**No. K0038411C      E.G. Moody, Chancellor**

_____

**No. E2016-01447-COA-R3-CV**

_____

A supplier of drywall was a creditor of a company that installed drywall. The owner of the indebted company signed a promissory note in the amount of $370,615 payable to the supplier and paid a small portion of the note before selling the business to his son for $12,000. The supplier filed suit to obtain a judgment for the balance owed on the promissory note after the transfer of the business to the son. The supplier obtained a judgment against the former owner, but not against the company, for the amount owed on the note. The supplier then filed this action against the son in an effort to have the sale set aside on the basis that it was a fraudulent conveyance. The trial court found the supplier was unable to satisfy the elements of either the actual fraud statute, Tenn. Code Ann. § 66-3-305(a)(1), or the constructive fraud statute, Tenn. Code Ann. § 66-3-306(a). We agree and affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Frederick Larue Conrad, Jr., Knoxville, Tennessee, for the appellant, Delta Gypsum, LLC.

Mary Foil Russell, Bristol, Virginia, for the appellee, Michael Felgemacher.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Delta Gypsum, LLC d/b/a Appalachian Gypsum ("DG") is a drywall supplier that supplied drywall materials and related services to W.F. Interiors, LLC ("WFI") when WFI was owned by Wilhelm Felgemacher ("Wilhelm"). In March 2009, Wilhelm agreed

to sell WFI to his son, Michael Felgemacher ("Michael"), the defendant. On March 10, 2009, Michael signed a promissory note in the amount of $12,000, payable to his father, and Wilhelm transferred ownership of WFI to Michael. Michael paid Wilhelm the $12,000 purchase price on June 9, 2009.

When Wilhelm sold the business to his son, WFI owed a substantial amount of money to DG. In October 2007, Wilhelm signed a promissory note payable to DG in the amount of $370,615.13. Wilhelm owed DG $346,890.70 when he transferred the business to his son. On May 20, 2009, after Wilhelm transferred WFI to Michael, but before Michael paid the note, DG filed a complaint against Wilhelm and WFI in an effort to obtain a judgment for the outstanding amount then due on the note. In January 2012, the trial court in that case issued a ruling that Wilhelm signed the note in his individual capacity rather than in his representative capacity and entered a judgment against Wilhelm alone for the outstanding balance.

DG has been unsuccessful in collecting its judgment against Wilhelm. DG filed this lawsuit against Michael in July 2012, asserting that Wilhelm's transfer of WFI to Michael constituted a fraudulent conveyance and should be set aside. DG alleged causes of action for actual fraud, pursuant to Tenn. Code Ann. § 66-3-305(a)(1), and for constructive fraud, pursuant to Tenn. Code Ann. § 66-3-306(a). The parties tried their case in February 2016. DG and Michael each proffered an expert to give an opinion on the value of WFI when Wilhelm transferred it to Michael in 2009. Testimony was also provided by Michael and his wife, Rachel. Wilhelm did not testify, and DG did not present a representative to testify at the trial.

The trial court filed its Order on June 15, 2016, finding DG failed to prove either its constructive fraud or actual fraud claim. The court concluded that DG failed to show that Wilhelm was "insolvent" when he sold the business to Michael, which it found was a prerequisite for finding Michael liable for constructive fraud pursuant to Tenn. Code Ann. § 66-3-306(a). As to DG's claim of actual fraud, the court concluded Michael rebutted the presumption of fraud that DG established by satisfying two of the statutory factors set forth in Tenn. Code Ann. § 66-3-305(b), demonstrating actual intent. The trial court did not assign a value to WFI as of the time when Wilhelm transferred it to Michael.

DG appealed the trial court's judgment. It contends, *inter alia*, that the trial court erred in failing to conclude Wilhelm's transfer of WFI to Michael constituted a fraudulent conveyance under either Tenn. Code Ann. § 66-3-305 or Tenn. Code Ann. § 66-3-306. It also argues the trial court erred by allowing Michael to testify regarding the value of WFI based on the advice of two individuals who were not present to testify at the trial.

## II. ANALYSIS

### A. Standard of Review

We review a trial court's findings of fact de novo upon the record, affording them a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Cross v. City of Memphis*, 20 S.W.3d 642, 644-45 (Tenn. 2000). We conduct a de novo review of legal issues, with no presumption of correctness afforded to the trial court's conclusions of law. *Blair v. Brownson*, 197 S.W.3d 681, 683 (Tenn. 2006). This case involves the interpretation of statutes, which involves questions of law that we review de novo. *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013); *State v. Pope*, 427 S.W.3d 363, 367 (Tenn. 2013).

### B. Actual Fraud

In Tennessee, the Uniform Fraudulent Transfer Act ("the Act") is codified at Tenn. Code Ann. §§ 66-3-301 to -313. The Act recognizes two different types of fraudulent transfers: actual fraud, codified at Tenn. Code Ann. § 66-3-305(a)(1), and constructive fraud, codified at Tenn. Code Ann. § 66-3-306. The statute describes actual fraud thusly:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; . . . .
>
> (b) In determining actual intent under subdivision (a)(1), consideration may be given, among other factors, to whether:
>
> (1) The transfer or obligation was to an insider;
>
> (2) The debtor retained possession or control of the property transferred after the transfer;
>
> (3) The transfer or obligation was disclosed or concealed;
>
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tenn. Code Ann. § 66-3-305.

The plaintiff alleging fraud has the initial burden of proving the defendant made a transfer that was fraudulent. *Stoner v. Amburn*, No. E2012-00075-COA-R3-CV, 2012 WL 4473306, at *8 (Tenn. Ct. App. Sept. 28, 2012). "A determination of whether a conveyance is fraudulent depends upon the facts and circumstances of each case." *In re Estate of Ralston*, No. M2012-00597-COA-R3-CV, 2013 WL 1804291, at *6 (Tenn. Ct. App. Apr. 29, 2013) (citing *Macon Bank & Trust Co. v. Holland*, 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986)). Fraud is often established by way of circumstantial evidence because direct evidence of fraud is not often available. *Id.*; *see also Macon Bank & Trust Co.*, 715 S.W.2d at 349. In addition to the statutory factors listed in § 66-3-305(b), courts will consider circumstantial evidence referred to as "badges of fraud" to show a debtor's fraudulent intent. *Stoner*, 2012 WL 4473306, at *8-9.[1] Some badges of fraud that Tennessee courts have considered include the following:

1. The transferor is in a precarious financial condition.

2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.

3. Inadequate consideration was given for the transfer.

---

[1]Although the *Stoner* court distinguishes the statutory factors from what it refers to as "badges of fraud," other courts refer to the statutory factors as "badges of fraud." *See In re Estate of Ralston*, 2013 WL 1804291, at *3; *Bigger v. Fields*, No. M2004-01489-COA-R3-CV, 2005 WL 2043762, at *4-5 (Tenn. Ct. App. Aug. 24, 2005). The Court of Appeals has described as a badge of fraud "any fact that throws suspicion on the transaction and calls for an explanation." *Macon Bank & Trust Co.*, 715 S.W.2d at 349.

- 4 -

4. Secrecy or haste existed in carrying out the transfer.

5. A family or friendship relationship existed between the transferor and the transferee(s).

6. The transfer included all or substantially all of the transfer's nonexempt property.

7. The transferor retained a life estate or other interest in the property transferred.

8. The transferor failed to produce available evidence explaining or rebutting a suspicious transaction.

9. There is a lack of innocent purpose or use for the transfer.

*Id.* at *9 (quoting *Nadler v. Mountain Valley Chapel Bus. Trust*, No. E2003-00848-COA-R3-CV, 2004 WL 1488544, at *2 (Tenn. Ct. App. June 30, 2004)); *see also McKay v. Reece*, No. M2006-01706-COA-R3-CV, 2007 WL 2702806, at *12 (Tenn. Ct. App. Sept. 11, 2007). If the plaintiff is able to prove the existence of one or more of the statutory factors or badges of fraud, a presumption of fraud arises and the burden then shifts to the defendant to disprove his or her fraudulent intent. *Stoner*, 2012 WL 4473306, at *9 (citing *Stone v. Smile*, No. E2009-00047-COA-R3-CV, 2009 WL 4893563, at *5 (Tenn. Ct. App. Dec. 18, 2009)); *see also Macon Bank*, 715 S.W.2d at 349; *Bigger v. Fields*, 2005 WL 2043762, at *5.

The record in this case does not include a transcript of the trial. The parties submitted a Statement of Evidence in accordance with Tenn. R. App. P. 24(c), and the record contains stipulations of fact to which the parties agreed prior to trial. In rendering its judgment, the trial court found the following pertinent facts, all of which were supported by the Statement of Evidence:

1. Michael Felgemacher ("Defendant") is currently the sole owner and President of W.F. Interiors ("WFI"), a limited liability company registered in the State of Tennessee.

2. Wilhelm Felgemacher, Michael Felgemacher's father, was the sole owner and past President of WFI.

3. From July 5, 1998 to 2009, Defendant was employed by WFI as a dry wall installer, foreman, superintendant and was paid a salary as an employee.

4. Until March 10, 2009, Defendant had no ownership interest in WFI, nor was he a member or officer of WFI.

5. Defendant did not regularly keep or review the books or financial records of WFI and was not involved in the business operation of WFI.

6. Defendant discussed taking over the business of WFI in late 2008 or early 2009 [with] his father.

7. Wilhem Felgemacher was 69 years old at that time and was interested in retiring. He was also not in good health.

8. It was becoming increasingly difficult for WFI or Wilhelm Felgemacher to get bonding. WFI could not bid on any jobs over $25,000 due to the bonding requirements.

9. Defendant could get bonding for work to be bid upon, including bonds for jobs over $25,000, first by pledge of his personal assets and later based on the company's financials.

10. Defendant and Wilhelm Felgemacher went to the office of Larry LaGuardia (accountant) and Michael LaGuardia (attorney) (brothers who had offices together) for advice on how to transfer WFI to Defendant.

11. Based on recommendation of the accountant and attorney, a price of $12,000.00 was set for WFI to be transferred to Defendant.

12. On or about March 10, 2009, Michael Felgemacher agreed to purchase WFI from Wilhelm Felgemacher.

13. On or about March 10, 2009, Michael Felgemacher signed a promissory note in the amount of $12,000 for the purchase of WFI.

14. It was the understanding of Defendant that the primary asset of the company, the goodwill of the business, would be transferred to Defendant.

15. At the time of the transfer of the company $12,000.00 was the book value of the goodwill of the business.

16. WFI does not now and has never owned real estate. Further it did not at the time of the transfer own vehicles or substantial equipment. The items owned by WFI were primarily hand tools, scaffolding and ladders.

. . . .

20. WFI installs drywall primarily on commercial jobs with very little equipment required; it does not maintain inventory, but orders the necessary supplies for each individual job.

21. In a case where larger equipment is needed, such as various types of lifts, they are always rented.

22. Defendant paid the promissory note by check dated June 9, 2009.

23. At the time Defendant purchased the membership interest in WFI, he was not aware of a debt owed to Plaintiff from WFI.

24. At the time Defendant purchased the membership interest in WFI, Wilhelm Felgemacher had already signed a promissory note for the debt to Plaintiff.

25. Defendant was not aware of Wilhelm Felgemacher's promissory note.

26. After Defendant purchased the membership interest in WFI, Plaintiff filed a Complaint on May 20, 2009, against Wilhelm Felgemacher and WFI, in the Law Court for Sullivan County, Case No. C38218(M) ["Delta Gypsum I"].

27. Defendant was not aware that Plaintiff maintained a claim against WFI until sometime at [sic] the time he paid the promissory note in the amount of $12,000.

. . . .

29. A judgment in Delta Gypsum I was rendered against only Wilhelm in the amount of $346,090.70.

. . . .

35. No evidence was offered on the assets or liabilities of the Debtor (Wilhelm Felgemacher) at the time of the transfer.

The trial court concluded that DG proved two of the statutory factors listed in Tenn. Code Ann. § 66-3-305(b), (1) and (4). These factors are that the transfer of WFI was to an insider, Wilhelm's son (factor 1), and that before WFI was transferred to Michael, Wilhelm had been sued or threatened with suit (factor 4). The trial court then

concluded that Michael rebutted the presumption of fraud that DG established. The trial court wrote:

> 13. One factor in this case rebutting the presumption of [fraud] is the age and health of the transferor. In the case before the Court, the Defendant discussed with his father taking over the business of WFI in late 2008 or early 2009. Wilhelm Felgemacher was 69 years old at that time and was interested in retiring, certainly a not unreasonable or uncommon interest. Wilhelm Felgemacher was also not in good health.
>
> 14. Another significant reason for the sale of the business from father to son was that it was becoming increasingly difficult for WFI or Wilhelm Felgemacher to get bonding. WFI could not bid on any jobs over $25,000 due to the bonding requirements. . . . Defendant could get bonding for work to be bid upon, including bonds for jobs over $25,000.
>
> 15. Another factor mitigating against a finding of fraud is the manner in which the transfer occurred and the amount arrived upon. Michael and Wilhelm went to their accountant and attorney's offices where a promissory note was prepared. The note was in the exact amount ($12,000) of the book value of the goodwill of the business.

Based on its determination that Michael rebutted the presumption of fraud, the trial court concluded that DG was unable to prove its claim of actual fraud pursuant to Tenn. Code Ann. § 66-3-305(a)(1). The trial court did not address the badges of fraud identified in the *Stoner* case, discussed above.

In arguing the trial court erred by failing to find it proved actual fraud, DG focuses on statutory factor 8 and contends that the consideration Michael gave for WFI was not reasonably equivalent to the value of the asset transferred. DG asserts that the $12,000 paid was not reasonably equivalent to the value of WFI at the time of its transfer. DG argues the trial court erred by failing to assign a value to WFI that was between the valuations established by the parties' experts.

Both DG and Michael hired experts to value the business. Michael's expert, Travis McMurray, valued WFI at $109,000 based on the business records Wilhelm provided to Mr. McMurray. The Statement of Evidence reveals that Mr. McMurray used the capitalization of earnings method for evaluating WFI. Mr. McMurray testified that the asset valuation method would have been a better method to evaluate the business, but he was not provided with the complete financial records that were necessary to perform that type of valuation.

DG's expert was Michael Borka, and Mr. Borka initially valued WFI at $348,305 using the market based approach. According to the Statement of Evidence, Mr. Borka had not been supplied with all the records that were apparently supplied to Mr. McMurray. After reviewing Mr. McMurray's report and hearing Mr. McMurray testify, Mr. Borka lowered his valuation to $200,000. In DG's expert report submitted into evidence, Mr. Borka qualified his valuation by explaining that "limited data [was] made available for analysis by management." Mr. Borka continued:

> We attempted to perform on-site inspections of the Company, its assets and records, but were not accommodated by the Company's management. The financial data provided to us by management was not complete and was not presented in accordance with Generally Accepted Accounting Principles (GAAP).

During the trial, Michael introduced a document into evidence described as "the 2008 business tax return" that valued the goodwill of WFI at $12,000. According to the Statement of Evidence, Michael testified that "at the time of the transfer of W.F. Interiors, LLC, the sum of $12,000.00 was the book value of the 'goodwill of the business,' which [he] testified he understood was the primary asset of W.F. Interiors, LLC." Michael further testified that WFI has never owned real estate and that it did not own vehicles or "substantial equipment" when his father transferred it to him. Michael testified that WFI owned fasteners valued at $145 each, screw guns valued at $149 each, and scaffolding valued at $300 to $400, but he did not testify about the quantity of each of these items.

According to the trial court, the fact that the price Michael paid for WFI matched the book value of the business's goodwill militated against a finding of fraudulent intent. The court did not assign a value to WFI as of the time Wilhelm transferred it to Michael, but it also did not find that DG established statutory factor 8. That is, the trial court did not find that the consideration Wilhelm received from Michael was not reasonably equivalent to the value of the asset transferred.

As the Court of Appeals has noted, an expert's testimony is "'purely advisory in character,'" and a fact finder is not required to accept an expert's testimony, even if it is not contradicted by any other evidence. *Burden v. Burden*, 250 S.W.3d 899, 915 (Tenn. Ct. App. 2007) (quoting *Thurmon v. Sellers*, 62 S.W.3d 145, 162 (Tenn. Ct. App. 2001)). "[V]aluation evidence is inherently subjective, [and] a trial court's valuation decisions need not coincide precisely with the valuation opinions offered into evidence." *Owens v. Owens*, 241 S.W.3d 478, 489 (Tenn. Ct. App. 2007) (citing *Waits v. Waits*, No. 01A01-9207-CV-00288, 1993 WL 49564, at *3 (Tenn. Ct. App. Feb. 26, 1993)). Goodwill may be considered when valuing a business that is not dependent on the particular skills of the seller. *Hartline v. Hartline*, No. E2012-02593-COA-R3-CV, 2014 WL 103801, at *13 (Tenn. Ct. App. Jan. 13, 2014); *see also York v. York*, No. 01-A-01-9104-CV00131, 1992

WL 181710, at *3 (Tenn. Ct. App. July 31, 1992). An owner of a company is competent to testify about the value of his business, and a court is not required to rely on the testimony of experts. *See York*, 1992 WL 181710, at *4, n.4; *State ex rel. Smith v. Livingston Limestone Co., Inc.*, 547 S.W.2d 942, 943 (Tenn. 1977) (explaining that lay witnesses are permitted to opine about market value of property if basis of opinion is provided).

In this case, where there is no transcript of the evidence, we are limited to the Statement of Evidence the parties prepared. We are not in a position to second-guess the trial court's decision not to adopt any of the valuations of WFI that were prepared by the parties' experts or about which the experts testified. "When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are 'uniquely positioned to observe the demeanor and conduct of witnesses.'" *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)); *see also Davis v. Davis*, 223 S.W.3d 233, 238 (Tenn. Ct. App. 2006). The trial court did not opine on the experts' credibility, but it also did not adopt either of the experts' valuations. The court acknowledged each of the experts' assignments of value, noting both experts' testimony that the asset approach was the preferred method of determining the value. The trial court's decision not to rely on either of the experts' reports is not surprising in light of the concerns expressed by both experts regarding the difficulty they each experienced obtaining WFI's financial records and their stated preference for a valuation method they were unable to apply.

Once the trial court found that DG proved two of the statutory factors set forth in Tenn. Code Ann. § 66-3-305(b), the presumption of actual fraud was established and the burden of disproving fraudulent intent shifted to Michael. The Statement of Evidence indicates that Michael testified to the following facts:

- When Wilhelm transferred WFI to Michael, Wilhelm was 69 years old, he was not in good health, and he was interested in retiring.

- WFI and Wilhelm were having difficulty obtaining bonding and WFI was unable to bid on jobs over $25,000 due to the bonding requirements. Michael, however, was able to obtain bonding for jobs over $25,000.

- When Wilhelm agreed to transfer the business to Michael, they went to the offices of an attorney and accountant for advice on transferring the business.

- Michael believed the business's goodwill was the primary asset of WFI.

- When WFI was transferred to Michael, the book value of WFI was $12,000, as evidenced by a 2008 business tax return.

The trial court relied on this testimony by Michael to find that Michael successfully rebutted the presumption of fraudulent intent. The Statement of Evidence does not show that DG presented any evidence at trial disputing any of this testimony. The weight to be given to the statutory factors a plaintiff has established is a question for the trial court. *Macon Bank & Trust Co*., 715 S.W.2d at 349-50. As the Court of Appeals concluded in *Macon Bank and Trust Company v. Holland*, "[w]e cannot say that the Chancellor erred in finding that the evidence preponderated in favor of the defendants' explanation." *Id.* at 350. Applying the same reasoning, we affirm the trial court's judgment that DG failed to prove that Wilhelm transferred WFI to Michael with the actual intent to defraud DG pursuant to Tenn. Code Ann. § 66-3-305(a)(1).

### C. Constructive Fraud

Constructive fraud is codified at Tenn. Code Ann. § 66-3-306, which provides, in pertinent part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

The elements a plaintiff must prove to establish a claim under this provision include (1) the creditor's claim arose before the transfer took place; (2) the debtor did not receive a reasonably equivalent value for the transfer; and (3) the debtor was insolvent or became insolvent as a result of the transfer. Tenn. Code Ann. § 66-3-306(a); *Stoner*, 2012 WL 4473306, at *10.

The Act addresses insolvency and states that a debtor is insolvent if either "the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation" or the debtor "is generally not paying such debtor's debts as they become due." Tenn. Code Ann. § 66-3-303(a), (b). The trial court stated in its findings of fact that "[n]o evidence was offered on the assets or liabilities of the Debtor (Wilhelm Felgemacher) at the time of the transfer." In its conclusions of law, the trial court found that DG offered no proof of Wilhelm's insolvency. The court further found that DG attempted to prove insolvency on cross examination by showing that DG's collection efforts against Wilhelm had not been successful and by alleging that Wilhelm had filed a bankruptcy petition at some point. The court concluded that neither of these methods was successful in proving Wilhelm's insolvency.

A review of the Statement of Evidence reveals that no mention is made either of DG's collection efforts against Wilhelm or any bankruptcy filing Wilhelm may have made. The Statement of Evidence includes a sentence stating that at the time of trial, the current balance on the promissory note was $487,097.16, but there are no statements regarding any of DG's collection efforts against Wilhelm. The following paragraph of the Statement of Evidence summarizes DG's cross examination of Michael:

The Defendant acknowledged on cross-examination that, at the time the Defendant purchased the membership interest in W.F. Interiors, LLC, Wilhelm Felgemacher had already signed a promissory note for the debt owed to the Plaintiff. The Defendant testified that he was not aware of the promissory note executed by Wilhelm Felgemacher. The Defendant stipulated that a complaint was filed by the Plaintiff against Wilhelm Felgemacher and W.F. Interiors, LLC in the Sullivan County Law Court on May 20, 2009, after the Defendant "had purchased the membership interest" in W.F. Interiors, LLC, and that the Defendant was not aware the Plaintiff maintained a claim against W.F. Interiors, LLC and Wilhelm Felgemacher.

Based on the limited information included in the record regarding the evidence introduced at trial, the only conclusion we can reach is that DG failed to establish either that Wilhelm was insolvent when he transferred WFI to Michael or that Wilhelm was rendered insolvent as a result of the transfer. DG contends that Michael "presented no evidence that Wilhelm Felgemacher had assets sufficient to cover the promissory note executed prior to the transfer and subsequent judgment." However, DG, as the plaintiff, is required to prove Wilhelm's insolvency; Michael, the defendant, is not required to prove that Wilhelm was not insolvent. Without evidence of Wilhelm's insolvency, DG is unable to prevail on its claim of constructive fraud. *See* Tenn. Code Ann. § 66-3-306(a). We, therefore, affirm the trial court's conclusion that DG failed to establish a claim for constructive fraud.

D. Evidentiary Ruling

DG contends that the trial court erred in permitting Michael to testify about the conversation he and Wilhelm had with the accountant and attorney with whom they met to work out the terms of the transfer of the business from Wilhelm to Michael. Trial courts have "a great deal of discretion regarding the admission or exclusion of evidence." *Tire Shredders, Inc. v. ERM-N. Cent., Inc.*, 15 S.W.3d 849, 858 (Tenn. Ct. App. 1999); *see also Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). As a result, Tennessee courts apply the abuse of discretion standard of review when determining whether a trial court erred in admitting particular evidence. *Shipley v. Williams*, 350 S.W.3d 527, 552 (Tenn. 2011); *Tire Shredders*, 15 S.W.3d at 858. "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s]

- 12 -

a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under this standard of review, a trial court's ruling will not be reversed if '"reasonable minds can disagree as to [the] propriety of the decision made.'" *Id.* (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).

For a party to challenge on appeal a trial court's decision admitting certain evidence, the record must include a "timely and specific objection to the evidence or motion to strike the evidence." *Tire Shredders*, 15 S.W.3d at 864. The *Tire Shredders* court based this statement on Tennessee Rule of Evidence 103(a)(1), which states:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context.

*See State v. Biggs*, 218 S.W.3d 643, 667 (Tenn. Crim. App. 2006) (explaining purpose of Rule 103(a)(1) '"is to enable meaningful appellate review of a trial court's evidentiary rulings"' (quoting *State v. Courtney*, No. 03C01-9406-CR-00195, 1995 WL 221646, at *2 (Tenn. Crim. App. Apr. 11, 1995))).

The only information included in the Statement of Evidence in regard to this testimony is the following:

> The Defendant testified that the Defendant and his father Wilhelm Felgemacher went to the offices of Larry LaGuardia, an accountant, and Michael LaGuardia, an attorney, (brothers who had offices together) to get advice on how to transfer W.F. Interiors, LLC from Wilhelm Felgemacher to the Defendant. Over the objection of Plaintiff's counsel, the Defendant testified that under the advice of Larry LaGuardia and Michael LaGuardia, a price of $12,000.00 was set for W.F. Interiors, LLC to be transferred to the Defendant. [No evidence was introduced as to the training or experience of either Larry LaGuardia or Michael LaGuardia or as to exactly what records were used to obtain that price.] The Plaintiff's counsel objected to this testimony as being hearsay as to the value of the business without any proper foundation or basis. [Plaintiff's counsel further objected to any testimony as to the statements or value determination of Larry LaGuardia or Michael LaGuardia who were not present as witnesses.]

(Brackets included in Statement of Evidence.)  We are unable to discern from the Statement of Evidence exactly what testimony Michael gave that DG found objectionable, the timeliness or exact language DG used to object, or how the trial court ruled.  In its Order, the trial court did not mention either DG's objection to any testimony by Michael or any ruling it issued in response.

We note that Rule 701 of the Tennessee Rules of Evidence allows a non-expert witness, such as Michael, to give opinion testimony that is "rationally based on [his] perception."  TENN. R. EVID. 701(a)(1).  Rule 701(b) permits a witness to testify to the value of his or her property.  *See Cawthon v. State*, No. 02C01-9412-CC-00289, 1995 WL 454023, at *2 (Tenn. Crim. App. Aug. 2, 1995) (allowing owner of company to testify about value of his company's property).  According to the Statement of Evidence, Michael testified that he understood the primary asset of WFI to be its goodwill and that he believed the goodwill was properly valued at $12,000.  Michael introduced into evidence a page from the 2008 business tax return showing the book value of WFI's goodwill was $12,000.  Based on the appellate record, we are unable to conclude that the trial court abused its discretion in allowing Michael to testify as he did.[2]

## III. CONCLUSION

The judgment of the trial court is affirmed.  Costs of this appeal shall be assessed against the appellant, Delta Gypsum, LLC d/b/a Appalachian Gypsum, for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[2]In light of our conclusion that DG has failed to prove either actual fraud or constructive fraud, we find that the other issues DG raises on appeal, concerning remedies and attorneys' fees, are pretermitted.